IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DAINGEAN TECHNOLOGIES LTD. | § § § | |
| *Plaintiff*, | § § | CIVIL ACTION NO. 2:23-CV-00347-JRG-RSP |
| v. | § § | |
| T-MOBILE USA, INC. | § § | JURY TRIAL DEMANDED |
| *Defendant*. | § § § | |
| ERICSSON INC. and NOKIA OF AMERICA CORPORATION | § § § | |
| *Intervenors*. | § § § | |

**PLAINTIFF DAINGEAN TECHNOLOGIES LTD.'S RESPONSE IN OPPOSITION TO DEFENDANTS' ADDITIONAL MOTIONS *IN LIMINE* (Dkt. 259)**

# TABLE OF CONTENTS

**Response to Defs' MIL No. 1.** Exclude Evidence, Argument, Testimony, or Opinions About the Technical Benefits, Infringement, or Validity of the Patent-in-Suit from a Daingean Fact Witness Outside of Personal Knowledge or 30(b)(6) Testimony. .............................. 1

**Response to Defs' MIL No. 2.** Exclude Evidence, Argument, Testimony, or Opinions Relating to Large Revenue Amounts or Purchase Numbers. ........................................................... 2

**Response to Defs' MIL No. 3.** Exclude Evidence, Argument, Testimony, or Opinions Regarding an Expert's Prior Retention by a Party, Atlantic IP, a Company Related to Gerald Padian, or Law Firm in Other Matters. .................................................................. 6

**Response to Defs' MIL No. 4.** Exclude Evidence, Argument, Testimony, or Opinions Regarding Presentations That Purport to Measure or Discuss the Technical Performance of Base Station Enhancements Where No Analysis Has Been Done to Apportion the Specific Benefits Attributable to the '803 Patent (e.g., PX-52). ....................................................... 6

**Response to Defs' MIL No. 5.** Neither Party Shall Analogize the Burdens of Proof in This Case to the Burden of Proof Required in Other Civil Contexts. With Respect to Voir Dire, Outside of the Context of Invalidity, a Party May Inquire Whether a Potential Juror Has Been Involved in Litigation, i.e., Either as a Party or as a Witness, Close Family Member, or Friend of a Party or Witness to a Litigation, Including Generally Whether Members of the Panel Have Experience in Cases Involving Criminal Law, Family Law, Divorce, or Civil Commitment……….. ....................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Biscotti Inc. v. Microsoft Corp.*,
    No. 2:13-cv-1015-JRG-RSP, 2017 WL 2536962 (E.D. Tex. May 18, 2017) ........................ 3, 9

*Correct Transmission, LLC v. Nokia of Am. Corp.*,
    No. 2:22-cv-000343-JRG-RSP, 2024 WL 1289784 (E.D. Tex. March 26, 2024) ................... 10

*Genband US LLC v. Metaswitch Networks Corp.*,
    No. 2:14-cv-33-JRG-RSP, 2016 WL 125503 (E.D. Tex. Jan. 9, 2016) ................................ 4, 9

*GREE, Inc. v. Supercell Oy*,
    No. 2:19-cv-70-JRG-RSP, 2020 WL 4057640 (E.D. Tex. Jul. 20, 2020) .............................. 2, 9

*Lionra Techs. Ltd. v. Fortinet, Inc.*,
    No. 2:22-cv-00322-JRG-RSP, 2024 WL 3331643 (E.D. Tex. July 8, 2024) ....................... 8, 10

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) .................................................................................... 2, 4

*Wireless Alliance, LLC v. AT&T Mobility LLC*,
    No. 2:23-cv-00095-RWS-RSP, Dkt. 245 (E.D. Tex. Oct. 23, 2024)..................................... 2, 9

Plaintiff Daingean Technologies Ltd. ("Daingean") urges the Court to reject all arguments raised in Defendants' Additional Motions *in Limine* (Dkt. 259).

\* \* \* \* \*

**Response to Defs' MIL No. 1.     Exclude Evidence, Argument, Testimony, or Opinions About the Technical Benefits, Infringement, or Validity of the Patent-in-Suit from a Daingean Fact Witness Outside of Personal Knowledge or 30(b)(6) Testimony.**

Defendants' motion is premised on the idea that Daingean's fact witnesses, including its corporate representative, "denied knowledge" of matters relating to technical benefits, infringement, and validity of the Patent-in-Suit, and therefore, should not be allowed to testify on those topics. Dkt. No. 259 at 1. To be clear, Daingean does not seek to have any of its fact witnesses offer testimony regarding the ultimate issues of infringement or validity, as these are the province of expert testimony. But Defendants should not be permitted to use this *limine* to preclude Daingean witnesses from offering testimony consistent with their prior testimony, including testimony regarding the benefits of the patent, and on this basis, the motion should be denied.

Specifically, while testifying as Daingean's corporate representative, Mr. O'Riordan did not deny knowledge of information relating to the technical benefits of the '803 Patent. Rather, when asked to identify "advantages or benefits" of the '803 Patent, he testified that he understands "the patent to speak about improving the communication capacity of cellular networks by reducing interference that can occur in these networks. So that would be a benefit to folks that are providing the cellular networks to customers of theirs." Ex. A, O'Riordan Tr. 47:9-23. Daingean should not be precluded from offering similar testimony from Mr. O'Riordan at trial.[1] To the extent Defendants believe Mr. O'Riordan is not qualified to offer this testimony as Daingean's Chief

---

[1] While there were questions regarding infringement that Mr. O'Riordan could not answer because he was not privy to confidential information produced in the case, e.g., Ex. A, O'Riordan Tr. 87:14-88:21, he answered Defendants' questions where he could and relied on Daingean's experts where appropriate.

Technical Officer and corporate representative, they can challenge his qualifications during cross-examination.

Defendants' *limine* assumes that Daingean's "witnesses denied knowledge of these matters during their depositions." Dkt. No. 293 at 1. But Mr. O'Riordan did not deny knowledge or plead ignorance on the benefits of the '803 Patent; he answered Defendants' questions and gave Daingean's position on those issues. Thus, the Court should deny Defendants' MIL No. 1 on facts that Mr. O'Riordan testified to on Daingean's behalf, and to the extent Defendants believe Mr. O'Riordan is not qualified to offer such testimony, they can challenge his qualifications during his cross-examination.

**Response to Defs' MIL No. 2.     Exclude Evidence, Argument, Testimony, or Opinions Relating to Large Revenue Amounts or Purchase Numbers.**

Defendants' MIL No. 2 raises many of the same flawed criticisms of Mr. Dell's opinions raised in Defendants' MTS #1 (Dkt. No. 188), which Daingean debunked in its prior briefing. *See* Dkt. Nos. 215 & 292. Defendants once again misconstrue Mr. Dell's incremental benefits analysis and seven-step apportionment. They complain about a *Uniloc* issue that does not exist, arguing that Daingean and Mr. Dell should not be allowed to refer to Defendants' revenues and "purchase numbers" because it will skew the damages horizon for the jury. And, they raise a host of other issues that are irrelevant or based on faulty reasoning. The Court should deny MIL No. 2.

*First*, Defendants' contention that Mr. Dell's analysis is tied to T-Mobile's entire-market customer revenue is wrong. As this Court has previously held, the EMVR is not implicated where an expert "conducted multiple … analyses supported by … technical opinions to calculate apportionment factors for incremental value…." *Wireless Alliance, LLC v. AT&T Mobility LLC*, No. 2:23-cv-00095-RWS-RSP, Dkt. 245 at 3 (E.D. Tex. Oct. 23, 2024); *GREE, Inc. v. Supercell Oy*, No. 2:19-cv-70-JRG-RSP, 2020 WL 4057640, at *7 (E.D. Tex. Jul. 20, 2020) (EMVR

2

inapplicable where expert began with gross revenue of the accused products and "conducted an apportionment analysis"); *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-1015-JRG-RSP, 2017 WL 2536962, at *5-6 (E.D. Tex. May 18, 2017) (expert does not invoke EMVR where "apportioning out the amount inherent in the price attributed to the value of the patented features.").

Here, Mr. Dell performed a multi-step apportionment, with the assistance of technical experts Drs. Feuerstein and Kowalski, to directly apportion the royalty base to the incremental benefit and value of the patented feature. As explained in detail in Daingean's opposition to Defendants' MTS #1 (Dkt. No. 188), this seven-step apportionment begins with T-Mobile's prepaid and postpaid revenue for wireless communication services, as reported in T-Mobile's SEC filings and T-Mobile produced documents, followed by: a ***first*** apportionment to remove the portion of postpaid revenues related to other services not directly related to the infringement in this case, such as T-Mobile's High Speed Internet Services, a ***second*** apportionment to include only 5G service revenue, a removal of ███, a ***third*** apportionment to the baseband units operating on the "N41" Band based on discussions with Drs. Feuerstein and Kowalski, a ***fourth*** apportionment that relied on Dr. Kowalski for the technical contribution of the '803 Patent ███, a ***fifth*** apportionment based on peak traffic/urban density, a ***sixth*** apportionment to account for T-Mobile's net profit margin, and a ***seventh*** apportionment based upon the share of the profit margin retained by the hypothetical licensor ███ *See* Dkt. No. 215 at 2-3. Defendants' criticism that "T-Mobile's customer revenue is divorced from the alleged technological improvement" misses the mark (*see* Dkt. 259 at 5), as Mr. Dell's seven-step apportionment confirms that his royalty base is directly tied to the economic benefit T-Mobile receives through its infringement.

***Second***, Defendants' argument regarding the SSPPU is inapplicable here for the reasons previously discussed in opposing MTS #1. *See* Dkt. No. 215 at 3-5. Again, because Mr. Dell's analysis directly apportions the royalty base to the incremental benefit and value of the patented feature, "it is not necessary for him to identify or rely upon the SSPPU." *See Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 WL 125503, at *5 (E.D. Tex. Jan. 9, 2016). And contrary to Defendants' argument, this is not a situation like *Uniloc*, where the Federal Circuit ruled that the "disclosure that a company has made $19 billion dollars in revenue from an infringing product," where the patented component constitutes a "minor" patent improvement and does not create the basis for customer demand, "cannot help but skew the damages horizon for the jury." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011). In *Uniloc*, the Federal Circuit specifically recognized that the plaintiff "implied a relationship between the entire market value of the accused products and the patent," which was problematic and "in clear derogation of the entire market value rule, because the entire market value of the accused products has not been shown to be derived from the patented contribution." *Id.* at 1321. That is not the case here, as Mr. Dell opines that "the appropriate royalty base … consists of the revenues and associated profits attributable to the portion of T-Mobile's 5G network that benefits from the use of the '803 Patent." *See* Ex. B (Dell Rpt.), ¶105; *see also id.* ¶¶ 98-104. The EMVR is not implicated here for these reasons and those discussed above.

***Third***, Daingean has no intention to focus on or highlight T-Mobile's "overall financial size, and wealth," as Defendants contend. Dkt. No. 259 at 7. Instead, consistent with Mr. Dell's reports, Mr. Dell and Daingean intend to present evidence that supports Mr. Dell's incremental benefit analysis. T-Mobile's revenue and other financials are directly tied to the Accused Products (i.e., the T-Mobile network and cellular services) and the *Georgia-Pacific* factors. Thus, the

4

information is relevant to Mr. Dell's opinions on incremental benefits and fair game. There is no danger of prejudice to T-Mobile on this point, and T-Mobile certainly identifies none.

**Fourth**, T-Mobile seeks to preclude evidence of T-Mobile's spending on its network and spectrum, arguing Daingean's experts have not offered evidence regarding T-Mobile's use of its available spectrum. Dkt. No. 259 at 7-8. But as Daingean has already pointed out, Mr. Dell directly relies on Dr. Kowalski's technical opinion that the '803 Patent provides more efficient use of available spectrum. Ex. B (Dell Rpt.), ¶¶219, 224. The '803 Patent allows T-Mobile to make more efficient use of its spectrum and serve more customers, therefore making it more profitable. As Dr. Kowalski explains, "[n]ot using the method of the ''803 Patent will impair spectral efficiency, which in turn will impair user throughput as well as cell throughput." Ex. C (Kowalski Rpt.), ¶64. T-Mobile's and Intervenors' produced documents—as well as publicly available documents—confirm the importance of 5G to the success of T-Mobile's cellular network. *See* Ex. B (Dell Rpt.), ¶¶44-50 and 207-216. Thus, evidence of T-Mobile's spending on its network and spectrum is not immaterial, irrelevant, or prejudicial; it is directly relevant to Mr. Dell's analysis of damages and should not be excluded.

**Fifth**, the Court should reject Defendants' baseless attempt to exclude evidence of the amounts paid ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Dkt. No. 259 at 8. As Daingean explained in opposing Defendants MTS #1, Mr. Dell relies on Dr. Kowalski's opinions on technical comparability, and under *Georgia-Pacific* Factor 12, he relies on ▇▇▇▇▇▇▇▇▇▇ to provide "a range of reasonable royalty rates and/or royalty payments for patents relevant to cellular technologies that include patents considered to be comparable to the '803 Patent." Ex. B (Dell Rpt.), ¶¶292 and 257-271. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.*, ¶257 (citing Ex. D, Ericsson's Delgado Tr.

5

at 24:5-25:2 and 25:20-26:5) and ¶267 (citing Ex. E, Nokia's Patel Tr. at 26:2-14 and 28:5-22). Moreover, Defendants' expert Ms. Bennis relies on a number of ▮▮▮▮▮▮▮▮▮▮▮▮ (all with relatively low-dollar amounts) and analyzes ▮▮▮▮▮▮▮▮▮▮. *See, e.g.*, Dkt. 178 at 2, 8-11. To the extent Ms. Bennis is allowed to testify regarding those licenses and rates, Daingean should at the very least be permitted to cross-examine Ms. Bennis as to why she declined to consider other ▮▮▮▮▮▮▮▮▮▮▮▮ with higher dollar amounts than the licenses she considered, which goes directly to her credibility. *See, e.g.*, Ex. F (Bennis Dep.) at 19:23-20:14; 21:8-23:19. Defendants provide no authority supporting their claim that any discussion of the amount paid under the ▮▮▮▮▮▮▮▮▮▮▮▮ will unfairly prejudice Defendants and confuse the jury. Because the licenses are relevant under *GP* Factor 12 and, at the very least, go to the credibility of Defendants' damages expert, the licenses and their financials should not be excluded.

**Response to Defs' MIL No. 3.     Exclude Evidence, Argument, Testimony, or Opinions Regarding an Expert's Prior Retention by a Party, Atlantic IP, a Company Related to Gerald Padian, or Law Firm in Other Matters.**

The parties have reached an agreement on Defendants' MIL No. 3 and stipulate the following:

> Neither party shall introduce evidence, argument, testimony, or opinions regarding an expert's prior retention by a party, *Atlantic IP, a company related to Gerald Padian*, or law firm in other matters.

**Response to Defs' MIL No. 4.     Exclude Evidence, Argument, Testimony, or Opinions Regarding Presentations That Purport to Measure or Discuss the Technical Performance of Base Station Enhancements Where No Analysis Has Been Done to Apportion the Specific Benefits Attributable to the '803 Patent (e.g., PX-52).**

Defendants repeat many of the same criticisms to the opinions discussed in ¶¶223-244 of Mr. Dell's reports that they raised in Defendants MTS #1 (Dkt. No. 188). But this *limine* goes further, as Defendants seek to preclude *all evidence* that "purports to measure or discuss the technical performance of base station enhancements" addressed in certain Ericsson, Nokia, and T-

6

Mobile documents, including PX-18 (Dkt. 259 Ex. 5), PX-46 (Dkt. 259 Ex. 6), PX-78, (Dkt. 259 Ex. 8), and PX-84 (Ex. G).[2] Dkt. 259 at 11. Defendants argue that all evidence, including expert opinions and testimony, relating to those documents should be precluded because the "base station enhancements" have not been apportioned to the "benefits actually attributable to the '803 Patent." Dkt. 259 at 10. Defendants' motion should be denied.

*First*, Daingean's technical experts Dr. Feuerstein and Kowalski rely on PX-18, PX-46, and PX-84 in their expert reports, and they offer opinions relating to infringement, as well as the technical benefits of the '803 Patent:

<u>**PX-18 (ERICSSON_00078659):**</u> Dr. Feuerstein provides technical opinions regarding PX-18 as part of his infringement analysis to show that, when SRS is used, base stations receive both in-cell (desired) and out-of-cell (interference) SRS transmissions. Further, the document shows how ███████████████. Ex. H (Feuerstein Op. Rpt.) ¶¶133, 134, 323, 327, 328, 387, 388. Dr. Kowalski also relies on PX-18 (identified as "[24]" in his report) to opine that ███████████████ and show that ███████████████ Ex. C (Kowalski Rpt.) ¶98.

<u>**PX-46 (ERICSSON_00012973)**</u>: Dr. Feuerstein provides technical opinions regarding PX-46 as part of his infringement analysis to show that, when SRS is used, base stations receive both in-cell (desired) and out-of-cell (interference) SRS transmissions. Further, the document shows how ███████████████. Ex. H (Feuerstein Op. Rpt.) ¶¶133, 329, 349-351, 389, 420). Dr. Kowalski also relies on PX-46 (identified as "[9]" in his

---

[2] Daingean has removed PX-52 from its trial exhibit list. Defendants also seek to exclude TMO_DAINGEAN00172840-871. *See* Dkt. 259 at 11, n.3. Defendants state the document is not on Daingean's trial exhibit list, but the document is listed as PX-84.

7

report) to corroborate his analysis of the benefits of the '803 Patent invention using Ericsson's own documentation. Ex. C (Kowalski Rpt.) ¶¶72, 87-90, 95-98. Specifically, Dr. Kowalski specifically uses this exhibit to compare the Accused Features to prior features in order to best approximate the benefit directly attributable to the '803 Patent invention. Ex. C (Kowalski Rpt.) ¶88 ("In [9], the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

<u>**PX-84 (TMO_DAINGEAN00172840-871)**</u>: Dr. Kowalski relies on PX-84 (identified as "[37]"), which discusses Nokia field tests, to corroborate his analysis of the benefits of the '803 Patent invention using Nokia's own documentation. Ex. C (Kowalski Rpt.) ¶102.

**Second**, as Daingean discussed in its opposition to Defendants' MTS #2 (Dkt. 216), Dr. Kowalski apportioned to account from the benefit of non-infringing features from the benefit of the '803 Patent by analyzing the benefit of the patented technology against non-infringing technology. Dkt. 216 at 14-15; *see also* Ex. C (Kowalski Rpt.) ¶¶73-80, 81-86, 87-89, 102-103. The resulting benefit, i.e., a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id.* Moreover, like the plaintiff's expert in *Lionra*, Dr. Kowalski used an "accepted apportionment analysis" when he compared the accused products (systems with the patented technology) to non-infringing alternatives (systems without it). *See Lionra Techs. Ltd. v. Fortinet, Inc.*, No. 2:22-cv-00322-JRG-RSP, 2024 WL 3331643 at *2 (E.D. Tex. July 8, 2024). Thus, "by analyzing the benefits the accused product enjoys over a non-infringing alternative," Dr. Kowalski "accounted for and apportioned out" the "portions of the accused product that do not make up the accused technology." *Id.*

**Third**, Mr. Dell states that his understanding of the technical benefits enabled by the '803 Patent stems from his discussions with Drs. Kowalski and Feuerstein. Ex. B (Dell Rpt.), ¶245. Mr.

8

Dell also states that he understands from Dr. Kowalski that ▓▓▓▓▓▓▓▓▓▓ are both within the scope of the '803 Patent." Ex. B (Dell Rpt.), ¶228, n.337. He refers to **PX-78 (ERICSSON 00016383)**, Ericsson's June 2023 Mobility Report, in stating that Ericsson's documents confirm testimony from Ericsson's Mr. Faxer regarding the benefits customers "could derive ▓▓▓▓▓▓▓▓▓▓ and show "how traffic patterns drive network evolution." Ex. B (Dell Rpt.) ¶238; *see also id.* ¶¶236-237. And he relies on **PX-84 (TMO_DAINGEAN00172840-871)** in discussing the results of Nokia's own field testing data, including ▓▓▓▓▓▓▓▓▓▓, as shown at TMO_DAINGEAN00172841. *See* Ex. B (Dell Rpt.) ¶241. As to PX-18, PX-46, and PX-78, Mr. Dell quotes statements that appear in those documents. *See id.*, ¶¶223-235, 238-244. The statements and passages Mr. Dell quotes or relies on from PX-18, PX-46, PX-78, and PX-84 tie the technical benefits discussed by Drs. Kowalski and Feuerstein to T-Mobile's subscription revenues.

**Fourth**, as discussed in response to MIL No. 2, Mr. Dell's incremental benefits analysis and seven-step apportionment—which relies upon the technical analysis provided by Drs. Kowalski and Feuerstein—properly apportions for the value of the patented feature. In other words, Mr. Dell conducts multiple analyses supported by "technical opinions to calculate apportionment factors for the incremental" benefits attributable to the '803 Patent. *Wireless Alliance*, No. 2:23-cv-95-RWS-RSP, Dkt. 245 at 3 (E.D. Tex. Oct. 24, 2024).[3] Therefore, it is not

---

[3] *See also GREE, Inc. v. Supercell Oy*, No. 2:19-cv-70-JRG-RSP, 2020 WL 4057640, at *7 (E.D. Tex. Jul. 20, 2020) (EMVR inapplicable where expert began with **gross revenue** of the accused products and "conducted an apportionment analysis"); *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-1015-JRG-RSP, 2017 WL 2536962, at *5-6 (E.D. Tex. May 18, 2017) (expert does not invoke EMVR where "apportioning out the amount inherent in the price attributed to the value of the patented features."); *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 WL 125503, at *5 (E.D. Tex. Jan. 9, 2016) ("Mr. Bakewell's analysis attempts to directly

9

necessary to separately apportion the "base station enhancements" reflected in PX-18, PX-46, PX-78, and PX-84 to the benefits of the '803 Patent. *See Lionra*, 2024 WL 3331643 at *2.

For all of these reasons, the Court should deny MIL No. 4. There is no basis to exclude PX-18, PX-46, PX-78, and PX-84, or ¶¶223-244 of Mr. Dell's report, and any concerns Defendants may have regarding those documents, or opinions based on those documents and the appropriate apportionment, are best addressed through cross-examination, not exclusion. *See Correct Transmission, LLC v. Nokia of Am. Corp.*, No. 2:22-cv-000343-JRG-RSP, 2024 WL 1289784, at *3 (E.D. Tex. March 26, 2024) ("There is no perfect apportionment … any concern [] is best addressed on cross-examination.").

**Response to Defs' MIL No. 5.    Neither Party Shall Analogize the Burdens of Proof in This Case to the Burden of Proof Required in Other Civil Contexts. With Respect to Voir Dire, Outside of the Context of Invalidity, a Party May Inquire Whether a Potential Juror Has Been Involved in Litigation, i.e., Either as a Party or as a Witness, Close Family Member, or Friend of a Party or Witness to a Litigation, Including Generally Whether Members of the Panel Have Experience in Cases Involving Criminal Law, Family Law, Divorce, or Civil Commitment.**

The parties have reached an agreement on Defendants' MIL No. 5 and stipulate the following:

> Neither party shall analogize the burdens of proof in this case to the burden of proof required in other civil contexts. With respect to voir dire, outside of the context of invalidity, a party may inquire whether a potential juror has been involved in litigation, i.e., either as a party or as a witness, close family member, or friend of a party or witness to a litigation, including generally whether members of the panel have experience in cases involving criminal law, family law, divorce, or civil commitment.

---

apportion the royalty base to the precise value of the patented features, so it is not necessary for him to identify or rely upon the SSPPU.").

10

Dated:  February 24, 2025

Respectfully submitted,

/s/  Amir H. Alavi
Amir H. Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com
Michael McBride
Texas Bar No. 24065700
mmcbride@aatriallaw.com
Scott W. Clark
Texas Bar No. 24007003
sclark@aatriallaw.com
Connie Flores Jones
Texas Bar No. 00793736
cfloresjones@aatriallaw.com
Masood Anjom
Texas Bar No. 24055107
manjom@aatriallaw.com
C. Ryan Pinckney
Texas Bar No. 24067819
rpinckney@aatriallaw.com
Justin Y. Chen
Texas Bar No. 24074024
jchen@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile:  (713) 751-2341

R. Allan Bullwinkel
Texas Bar No. 24064327
abullwinkel@hpcllp.com
Michael F. Heim
Texas Bar No. 09380923
mheim@hpcllp.com
Eric J. Enger
Texas Bar No. 24045833
eenger@hpcllp.com
Blaine A. Larson
Texas Bar No. 24083360
blarson@hpcllp.com
Alden G. Harris

    Texas Bar No. 24083138
    aharris@hpcllp.com
    Michael B. Dunbar
    Texas Bar No. 24125213
    mdunbar@hpcllp.com
    HEIM PAYNE & CHORUSH LLP
    609 Main Street, Suite 3200
    Houston, Texas 77002
    Telephone: (713) 221-2000
    Facsimile: (713) 221-2021

    Andrea L. Fair
    Texas Bar No. 24078488
    andrea@millerfairhenry.com
    Charles Everingham IV
    Texas Bar No. 00787447
    chad@millerfairhenry.com
    MILLER FAIR HENRY PLLC
    1507 Bill Owens Pkwy
    Longview, Texas 75604
    Telephone: (903) 757-6400
    Facsimile: (903) 757-2323

    *Counsel for Plaintiff Daingean Technologies Ltd.*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on February 24, 2025, a copy of the foregoing was served electronically through the U.S. District Court, Eastern District of Texas ECF system to all counsel of record who are Filing Users of the Court's Electronic Filing System.

    */s/ Amir H. Alavi*
    Amir H. Alavi