IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DAINGEAN TECHNOLOGIES LTD., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 2:23-CV-00347-JRG-RSP |
| T-MOBILE USA, INC., | § § § | |
| *Defendant*, | § § § | |

### MEMORANDUM ORDER

Before the Court is Plaintiff Daingean Technologies Ltd.'s Motion to Exclude Certain of Ms. Bennis's Opinions Under *Daubert*. **Dkt. No. 178.** For the reasons discussed below, the Court **GRANTS** the Motion **IN PART**.

### I. Legal Standard

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether

particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

2

## II. Analysis

### A. Equal Value

First, Daingean moves to exclude Ms. Bennis's assumptions about the purported equal value of patents from comparable licenses. Dkt. No. 178 at 8. Plaintiff argues that similar opinions of Ms. Bennis, and other experts, have been excluded for not being reliable or sufficiently tied to the facts of the case. *Id*; *see EcoFactor, Inc. v. Ecobee, Inc*., No. 6:20-cv-00428, Dkt. No. 208 at 2 (W.D. Tex. June 1, 2023). Furthermore, Daingean argues that Ms. Bennis improperly fails to analyze the commercial differences between settlement licenses and the hypothetical negotiation. Dkt. No. 178 at 9.

Defendants dispute Daingean's characterization of Ms. Bennis's opinions. Defendants maintain that her opinions are based directly on the facts of this case. Dkt. No. 217 at 2. Defendants walk through all the agreements that Ms. Bennis relies on. First, for the Mitsubishi/Daingean license, which includes the asserted '803 patent, they explain that Ms. Bennis apportions based on the negotiation record. *Id.* at 2–3; Dkt. No. 178-3 at ¶¶ 78, 97–99. Similarly for the Ericsson/IPCom license, Defendants explain that Ms. Bennis's analysis involved estimating a royalty from a license of over 200 patents and patent families. Dkt. No. 217 at 4. Based on the litigation record and interviews with Ericsson employees, Ms. Bennis apportioned. *Id.* at 4–5; Dkt. No. 178-3 at ¶¶ 253 n.619, 159, 252. Ms. Bennis applied a similar methodology for the IP Bridge licenses. Dkt. No. 217 at 5–6. Defendants next justify Ms. Bennis's reasonableness check based on Ericsson's royalty rate and Apple's covenant not to sue. *Id.* at 7. Finally, Defendants argue that Ms. Bennis appropriately considered the settlement context of the licenses. *Id.* at 9–10.

After review of Ms. Bennis's report, the Court finds that her analysis is sufficiently tied to the facts of this case. Ms. Bennis does not arbitrarily assign equal value to all patents in a license,

as Daingean suggests. Instead, she analyzes the specific context of the license and the parties to those licenses' negotiating positions. Furthermore, she sufficiently analyzed the settlement context of the license that arose in that context. Therefore, the Court finds that Ms. Bennis's opinions about apportionment pass muster under *Daubert* and associated precedent.

### B. Royalty Stacking

Next, Daingean accuses Ms. Bennis of improperly relying on a royalty stacking theory. Dkt. No. 178 at 11. According to Daingean, it is improper for her to opine that because the 5G standard contains thousands of patents Plaintiff's damages theory would make paying royalties on all those patents untenable. *Id.*

Defendants respond that Ms. Bennis's opinions are proper rebuttal to Plaintiff's damages opinions. Dkt. No. 217 at 10. Defendants explain that Mr. Dell, Plaintiff's damages expert, opines that T-Mobile would agree that 22%-30% of customer revenue is attributable to the '803 patent because the '803 patent purportedly increases throughput by that percentage. *Id.* Defendants argue that that assumption is illogical because other patents that make up, for example, the 5G standard, increase throughput by several thousand percent. *Id.* at 10–11.

The Court finds nothing unreliable nor impermissible in this approach. Plaintiff fails to persuasively demonstrate that Defendants should not be able to present evidence showing potential deficiencies in Plaintiff's damages theories. This portion of her opinion does not merit striking.

### C. ROIC

Next, Daingean seeks to exclude Ms. Bennis's opinions on operating profit or ROIC (return on invested capital). Dkt. No. 178 at 12. According to Daingean, Ms. Bennis does not herself agree with her own methodology. *Id.*

Defendants respond that Ms. Bennis's opinions directly respond to Mr. Dell's. Dkt. No. 217 at 12. Defendants argue that examining and criticizing another expert's work is the traditional role of experts. *Id.* at 13.

The Court agrees with Defendants. An expert should be allowed to respond to the methodology of the adversary's expert. To the extent Ms. Bennis has criticized a methodology Plaintiff alleges that she is now employing, that is proper fodder for cross-examination and potential impeachment. The Court declines to strike on this basis.

### D. Opinions Based on the Nokia License

Next, Daingean argues that "[t]o the extent the Court grants Daingean's motion for summary judgment on the Nokia License, it should exclude Ms. Bennis's opinions reducing damages based on such license defense. *See* Ex. 4 ¶¶ 36, 58-67, 71; Ex. 1 ¶¶52, 65-77, 84, 241-244, 261, 324-325, 334." Dkt. No. 178 at 14. Daingean also argues that the license is not comparable and cannot be used for her damages opinion. *Id.*

Defendants respond that even if the Court grants Daingean's summary judgment motion, their damages opinions regarding the Nokia license are relevant. This is because

> Daingean proposes that Mitsubishi is the counterparty to T-Mobile in any hypothetical negotiation under Georgia-Pacific, and that the hypothetical negotiation would take place in July 2022. Knowing that Nokia had the option to license the '803 Patent in 2022, Mitsubishi would have consulted Nokia for assistance in these hypothetical negotiations, including in attempting to value the '803 Patent.

Dkt. No. 217 at 15.

The Court has addressed Daingean's Motion for Summary Judgment based on the Nokia license. Dkt. No. 386. In addressing Daingean's Motion, the Court decided that a fact issue remained about whether Nokia is licensed under the Essential Patent prong of the contract. *Id.* at 7. However, the Court foreclosed other pathways for licensure. *Id.* at 5–6. Accordingly, the Court

5

**STRIKES** any of Ms. Bennis's opinions which contradict the Court's ruling on the Nokia license. To the extent Ms. Bennis's opinions are consistent with the Court's ruling, she is permitted to testify about the Nokia/Mitsubishi license and the parties' bargaining positions at the hypothetical negotiation. Finally, the Court disagrees that the Nokia/Mitsubishi license is categorically not comparable and thus not relevant. The license gave Nokia the option to license the '803 patent, at least until Mitsubishi transferred the patent. *See* Dkt. No. 386 at 5. The license is thus relevant.

### E.  Opinions Based on Other Experts

Finally, Daingean moves to strike Ms. Bennis's opinions that are premised entirely on Dr. Van der Weide's challenged technical opinions, and Dr. Carpenter's opinions. Dkt. No. 178 at 14, 15. Defendants challenge the bases for those motions to strike, but do not provide an independent basis for keeping these opinions of Ms. Bennis.

The Court concurrently denies Daingean's motion to strike Mr. Carpenter and thus declines to strike Ms. Bennis's opinions that rely on Mr. Carpenter.

The Court concurrently grants parts of Daingean's Motion to Strike Dr. van der Weide. To the extent that Ms. Bennis relies on the stricken opinions of Dr. van der Weide, the Court **STRIKES** those portions of Ms. Bennis's report.[1]

**SIGNED this 29th day of June, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[1] Daingean cites Paragraphs 231–232 of Ms. Bennis's opening report and Paragraphs 32–33, 42–43 of her rebuttal report as relying on Dr. van der Weide. Those paragraphs however do not mention Dr. van der Weide nor do they seem to incorporate any of his opinions. Other paragraphs, however, do rely on Dr. van der Weide.