IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DAINGEAN TECHNOLOGIES LTD., § § *Plaintiff*, § § v. § CIVIL ACTION NO. 2:23-CV-00347-JRG-RSP § T-MOBILE USA, INC., § § *Defendant*, § § | |

### MEMORANDUM ORDER

Before the Court is Defendants' Motion to Strike #1: *Daubert* Motion to Exclude Damages Expert Opinions of Stephen E. Dell. **Dkt. No. 188.** For the reasons discussed below, the Court **DENIES** the Motion.

### I.  Legal Standard

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether

particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## II. Analysis

### A. Starting Point

Defendants first argue that "the Court should strike Mr. Dell's damages theory because his royalty base starts with T-Mobile's entire-market customer revenue and not the smallest salable patent practicing unit (which Daingean identifies) embodying the patented invention ('SSPPU'), as required by law." Dkt. No. 188 at 3 (footnote omitted). According to Defendants, "Daingean identified the infrastructure base station as the" SSPPU. *Id.* at n.7 Nevertheless, Defendants contend, "Mr. Dell's damages calculation start with the customer revenue generated by T-Mobile's network and then narrows to customer revenue he estimates to be generated by the infringing part of T-Mobile's 5G network." *Id.* at 4.

Daingean responds that Mr. Dell's analysis is properly apportioned to the portion of T-Mobile's 5G network "in which the accused functionalities were enabled" and then further apportioned. Dkt. No. 215 at 2. Daingean argues that "[b]ecause Mr. Dell's analysis directly apportions the royalty base to the incremental benefit and value of the patent feature, 'it is not necessary for him to identify or rely upon the SSPPU.'" *Id.* at 3 (quoting *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 WL 125503, at *5 (E.D. Tex. Jan. 9, 2016)); *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301–04 (Fed. Cir. 2015). Furthermore, Daingean disputes that the appropriate royalty base is the infrastructure base stations. Dkt. No. 215 at 3.

In Reply, Defendants maintain that Mr. Dell's damages model improperly avoids the SSPPU. Dkt. No. 249 at 1. Defendants emphasize that starting with T-Mobile's revenue skews the damages horizon for the jury. *Id.* Second, Defendants argue that the SSPPU can only be avoided when experts rely on comparable licenses. *Id.* & n.1.

3

In Sur-reply, Daingean argues that Mr. Dell's analysis does not implicate the EMVR. Dkt. No. 292 at 1. Daingean further disputes Defendants' position that incremental benefits can only be established by relying on comparable licenses. *Id.*

The fundamental principle here is that "[a] patentee is only entitled to a reasonable royalty attributable to the infringing features." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018). The Federal Circuit has also cautioned against using large revenue numbers as the royalty base to avoid "skew[ing] the damages horizon. *Id.* (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011)); *see also LaserDynamics, Inc. v. Quanta Computer, Inc.,* 694 F.3d 51, 67 (Fed. Cir. 2012).

The Court finds that Mr. Dell does not invoke the Entire Market Value rule and sufficiently apportions to the infringing features. First, the Court has granted Defendants' MIL that prevents Plaintiff from showing the jury the total revenue numbers, which will avoid the prejudice of such large numbers being shown to the jury. Dkt. No. 348 at 4. Next, the Court recognizes that in cases like this one, much of the benefit and value derived from using the patented technology comes from improved network effects, and not the cost of the equipment, thus there may be disputes as to how to properly apportion. *See Genband,*, 2016 WL 125503, at *5; *see also Wireless All., LLC v. AT&T Mobility LLC*, No. 2:23-CV-00095-RWS-RSP, 2024 WL 4573255, at *2 (E.D. Tex. Oct. 24, 2024). Here, Mr. Dell relies on other experts in the case to identify the benefits of the patent and he took several apportionment steps in order to confine the damages model to the infringing features. The Court thus will not strike his opinion on this basis.

### B. Apportionment

Next, Defendants raise several issues with the specific apportionment steps Mr. Dell took. Dkt. No. 188 at 5–12. First, Defendants say that Mr. Dell fails to apportion the customer revenue

paid by U.S. customers for products/services other than U.S. 5G data traffic. *Id.* at 6. Second, they say that Mr. Dell's reliance on Dr. Kowalski's opinions is unreliable because Defendants have moved to strike those opinions of Dr. Kowalski and those opinions rely on interference sensing that is not deployed in T-Mobile's network.[1] *Id* at 6–7. Third, they argue that even if Dr. Kowalski's opinions are reliable there is no economic support for attributing a 22%–30% increase in throughput to a 22%–30% increase in network revenue. *Id.* at 7. Fourth, Defendants argue that Mr. Dell's apportionment based on peak data traffic is unreliable because it relies on automobile traffic data without demonstrating any link of that data to network traffic. *Id.* at 8. Fifth, Defendants contend that Mr. Dell fails to apportion for other technology that is necessary to make the 5G network function. *Id.* at 9. Sixth, Defendants say that Mr. Dell's division of profits based on operating profit margins is unreliable for several reasons. *Id.* at 10–11.

Plaintiff responds to all these critiques. Dkt. No. 215 at 5–13. First, Plaintiff argues that the customer revenue numbers Mr. Dell relies upon are the only relevant ones because the features Defendants point out are not tied to the price of the service. *Id.* at 5–6. Second, Daingean maintains that it is entirely appropriate for Mr. Dell to rely on Dr. Kowalski's analysis. *Id.* at 6. Additionally, Daingean explains that T-Mobile's customers place significant value on increased throughput justifying Mr. Dell's economic analysis. *Id.* at 6–7. Regarding relying on automobile traffic, Daingean argues that it serves as an informative proxy for the peak cellular traffic environment which Mr. Dell corroborates with documents from Defendants. *Id.* at 8–9. Fifth, Daingean argues that Mr. Dell does in fact apportion to the footprint of the patent and does not include the value of other patents that make up the 5G standard. *Id.* at 10. Finally, Daingean responds that Mr. Dell's

---

[1] In a separate order, the Court denies Defendants' motion to strike Dr. Kowalski's opinions.

usage of operating profit margin is economically sound, reliable, and based on his previous apportionments. *Id.* at 11–13.

After review of the briefing, and the report, the Court finds that Mr. Dell's opinions are sufficiently reliable to survive the *Daubert* motion. Mr. Dell performs several apportionments that seek to limit the damages to the footprint of the patented technology. All of Defendants' arguments go to the weight of the evidence and not its admissibility. Thus, Defendants' proper recourse is vigorous cross-examination and presenting evidence of their own.

### C. Relevance Objections

Finally, Defendants raise relevance objections to several parts of Mr. Dell's report. Dkt. No. 188 at 12–15. First, they seek to exclude discussion of T-Mobile's revenue and profits; second, cost of spectrum; third, non-comparable Ericsson/Nolia licenses; fourth, Ericsson presentations. *Id.*

Plaintiff responds that all of these categories are relevant. Dk. No. 215 at 13–15. Fundamentally, Daingean argues that they are all relevant because Mr. Dell relies on them to form his opinion. *Id.* at 13.

The Court declines to strike these parts of Mr. Dell analysis on relevance grounds because he reasonably relies on these inputs for his analysis. The Court's MIL ruling has addressed the potential prejudice of some of these categories. *See* Dkt. No. 348 at 4 (preventing the showing to the jury of total revenue numbers). The Court does not find that any further relief is warranted.

**SIGNED this 30th day of June, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE