IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DAINGEAN TECHNOLOGIES LTD., § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> T-MOBILE USA, INC., § <br> *Defendant*, § | CIVIL ACTION NO. 2:23-CV-00347-JRG-RSP |

**MEMORANDUM ORDER**

Before the Court is Defendants' Motion to Strike #3: *Daubert* Motion to Exclude Expert Opinions of Dr. Feuerstein Related to Defendant's Alleged Infringement of the '803 Patent. **Dkt. No. 190.** For the reasons discussed below, the Court **DENIES** the Motion.

**I.    Legal Standard**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether

particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## II. Analysis

### A. Infringement Reads

First, Defendants argue that Dr. Feuerstein relies on the wrong test for literal infringement. Dkt. No. 190 at 8. They rely on Dr. Feuerstein's deposition where he was asked a question about whether the interference amount was "literally" the same at the base station and at the mobile subscriber station and he responded that they would not be "literally exactly perfectly the same." *Id.* According to the Defendants, this testimony means he did not apply the correct test.

Next, Defendants argue that Dr. Feuerstein's analysis is not technically correct. *Id.* at 8. Defendants argue that limitation 12[F] ("an interference amount at the adjacent mobile subscriber stations in the areas contiguous to the area corresponding to the base station") cannot be met by measuring the interference amount at the base station. *Id.* at 8–9.

Plaintiff responds that Dr. Feuerstein applied the correct legal test and that Defendants' criticism of his interpretation goes to the fact question of infringement. Dkt. No. 214 at 3. Dr. Feuerstein's report cites the correct standard for literal infringement: "I am also informed that a claim may be literally infringed when each and every limitation recited in the claim is literally met by the accused product or method." Dkt. No. 190-3 at ¶ 34.

The Court denies the Motion on these bases. First, Dr. Feuerstein relies on the correct standard in his report, and his deposition answer does not conflict with that standard. Second, the Court addressed the claim construction argument regarding limitation 12[F] and found that Dr. Feuerstein's reading was permissible, and what remained was a fact question. Dkt. No. 389 at 6–7. The Court thus does not strike his opinions.

### B. Interference Sensing

Next, Defendants argue that Dr. Feuerstein's opinion is unreliable because he opines that T-Mobile's use of Interference Sensing infringes the asserted claim, but T-Mobile has never used this feature. Dkt. No. 190 at 10.

The Court previously denied Defendants' motion for partial summary judgment regarding the Interference Sensing feature. Dkt. No. 384. The Court found that a fact issue remained as to whether T-Mobile used the interference sensing feature. *Id.* at 3. The Court thus denies T-Mobile's motion to strike Dr. Feuerstein's opinions regarding interference sensing.

Accordingly, the motion is **DENIED**.

**SIGNED this 30th day of June, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE