# Exhibit I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **DAINGEAN TECHNOLOGIES LTD.,** | **Case No. 2:23-cv-00347-JRG** |
| **Plaintiff,** | |
| vs. | |
| **T-MOBILE USA, INC.,** | |
| **Defendant,** | |
| **ERICSSON INC.,** | **JURY TRIAL DEMANDED** |
| **Intervenor,** | |
| **NOKIA OF AMERICA CORPORATION,** | |
| **Intervenor.** | |

### AMENDED PROPOSED FINAL JURY INSTRUCTIONS[1]

---

[1] Submissions agreed to by both Daingean and Defendants are not highlighted. Submissions proposed by Daingean but not agreed to by Defendants are highlighted in green. Submissions proposed by Defendants but not agreed to by Daingean are highlighted in yellow. The parties have entered their objections, explanations, citations, and commentary in footnotes only.

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

CONTENTIONS OF THE PARTIES .................................................................8

PERSON OF ORDINARY SKILL IN THE ART.............................................12

PATENT CLAIMS ............................................................................................14

CLAIM CONSTRUCTION...............................................................................15

CLAIM LIMITATIONS.....................................................................................17

INFRINGEMENT..............................................................................................18

DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT" ...................19

INVALIDITY ....................................................................................................24

PRIOR ART .......................................................................................................26

ANTICIPATION................................................................................................28

OBVIOUSNESS................................................................................................29

WRITTEN DESCRIPTION...............................................................................33

LICENSE (NOKIA)...........................................................................................35

PATENT EXHAUSTION ..................................................................................36

DAMAGES – GENERALLY.............................................................................38

REASONABLE ROYALTY..............................................................................39

DATE OF COMMENCEMENT OF PATENT DAMAGES .............................46

DELIBERATIONS ............................................................................................49

# INTRODUCTION[2]

Ladies and Gentlemen:

You have heard the evidence in this case, and I will now instruct you on the law that you must apply.

Each of you will have a copy of these final jury instructions that I am giving you now. You will have these instructions for your review when you retire to deliberate in a few minutes. Accordingly, there is no need for you to take notes unless you particularly want to.

It is your duty to follow the law as I give it to you. On the other hand, you, the jury, are the sole judges of the facts in this case. Do not consider any statement that I have made in the course of the trial or make during these instructions as an indication that I have any opinion about the facts in this case.

You are about to hear closing arguments from the attorneys for both of the parties.[3] Statements and arguments of the attorneys are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You will take this verdict form with you to the jury room, and when you have reached a unanimous agreement as to the verdict, you will have your foreperson fill in the blanks in the verdict form, date it, and sign it.

---

[2] Final Jury Instructions at 1, *Pardalis Tech. Licensing, LLC v. Int'l Business Machines Corp.*, No. 2:22-cv-00452-JRG-RSP (E.D. Tex. Sep. 26, 2024) (not filed); *see also* Final Jury instructions at 1, *General Access Solutions, Ltd. v. Cellco Partnership D/B/A Verizon Wireless et al.*, No. 2:22-cv-00394-JRG (E.D. Tex. Jun. 27, 2024) (not filed); Final Jury Instructions at 1, *Atlas Global Tech., LLC v. TP-Link Tech. Co., Ltd.*, No. 2:21-cv-00430-JRG-RSP (E.D. Tex. Sep. 13, 2023) (not filed); Final Jury Instructions at 1, *Finesse Wireless LLC v. AT&T Mobility LLC*, No. 2:21-cv-00316-JRG (E.D. Tex. Jan. 12, 2023) (not filed).

[3] Final Jury Instructions at 2, *Pardalis*; *see also* Final Jury Instructions at 1, *Atlas*; Final Jury Instructions at 1, *Finesse*.

1

Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win the case and then answer the questions to reach that result. Again, your answers and your verdict must be unanimous.

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all the witnesses, regardless of who may have called them, and you may consider the effect of all the exhibits received and admitted into evidence, regardless of who may have produced or presented them. You, the jurors, are the sole judges of the credibility of all witnesses and the weight and effect to be given to all of the evidence in this case.[4]

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony to not believe. You alone are to determine the questions of credibility or truthfulness of the witnesses, and in weighing the testimony of the witnesses, you may consider the witness's manner and demeanor as reflected on the witness stand.

You may consider any feelings or interest a witness may have in the case and any bias or prejudice about the case that the witness may have, and you may consider the consistency or inconsistency of his or her testimony considered in the light of the circumstances.

Has the witness been contradicted by other evidence? Has he or she made statements at other times in other places contrary to what he or she said on the witness stand? You must give the testimony of each witness the amount of credibility and weight that you think it deserves. You must keep in mind, however, that a simple mistake does not mean that a witness is not telling the truth.

---

[4] Final Jury Instructions at 2, *Pardalis*; *see also* Final Jury Instructions at 2, *General* Access; Final Jury Instructions at 2, *Atlas*; Final Jury Instructions at 2, *Finesse*.

You must consider whether any misstatement was an intentional falsehood or a simple lapse of memory and what significance could be attached to that testimony.

Unless I instruct you otherwise, you may properly determine that the testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all of the evidence you believe that single witness.

As I have told you previously, the attorneys in this case are acting as advocates for their competing clients, and they have a duty to object when they believe evidence is offered that should not be admitted under the rules of the Court.

In that case, when the Court has sustained an objection to a question addressed to a witness, you are to disregard the question entirely, and you may not draw any inferences from its wording or speculate about what the witness would have said if I had permitted the witness to answer the question. If, on the other hand, the objection was overruled, then you are to treat the answer to the question and the question itself just as if no objection had been made; that is, like any other question and answer. By allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.[5]

At times during the trial, it was necessary for the Court to talk to the lawyers outside of your hearing when here at the bench, or by calling a recess and talking to them while you were out of the courtroom.[6] This happens because during a trial, there are things that sometimes come up that do not involve the jury. You should not speculate about what was said during such discussions that took place outside of your presence.

---

[5] Final Jury Instructions at 4, *Pardalis*; *see also* Final Jury Instructions at 3, *General* Access; Final Jury Instructions at 3, *Atlas*; Final Jury Instructions at 3, *Finesse*.

[6] Final Jury Instructions at 4, *Pardalis*; *see also* Final Jury Instructions at 3, *General* Access; Final Jury Instructions at 3, *Atlas*; Final Jury Instructions at 3, *Finesse*.

Certain testimony in the case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. If a witness cannot be present to testify in person, then the witness's testimony may be presented under oath in the form of a deposition. Before this trial began,[7] the attorneys representing the parties in this case questioned these deposition witnesses under oath. At that time, a court reporter was present and recorded their sworn testimony. Deposition testimony is entitled to the same consideration by you, the jury, as testimony given by a witness in person from the witness stand in open court. Accordingly, you should judge the credibility and importance of the deposition testimony to the best of your ability, just as if the witness had testified before you from the witness stand.

While you should consider only the evidence in this case, you should understand that you are permitted to draw such reasonable inferences from the testimony and the exhibits as you feel are justified in the light of common experience.

In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and the evidence in this case. However, you should not base your decisions on any evidence not presented by the parties during the trial of this case, including your own personal experiences with any particular products that are at issue in this case.

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence; that is, the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction

---

[7] Final Jury Instructions at 5, *Pardalis*; *see also* Final Jury Instructions at 4, *General* Access; Final Jury Instructions at 4, *Atlas*; Final Jury Instructions at 4, *Finesse*.

between direct or circumstantial evidence, but simply requires that you, the jury, find the facts based on the evidence presented, both direct and circumstantial.

The attorneys have used slides and other visual aids, sometimes referred to as "demonstrative exhibits," or "demonstratives" while presenting or examining a witness. Demonstrative exhibits are a party's picture or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstrative exhibit, rely on your recollection. The demonstrative is not evidence, but the witness's testimony during which they use the demonstrative is evidence. Demonstrative exhibits will not be available for you to view during your deliberations.[8]

When knowledge of a technical subject may be helpful to the jury, a person who has special training and experience in that technical field, called an expert witness, is permitted to state his or her opinion on those technical matters to the jury. However, you are not required to accept that opinion. As with any other witness, it is solely up to you to decide who you believe and who you do not believe and whether or not you want to rely on their testimony.

Any patent holder has the right to file a suit in a United States District Court, and the right to a trial by jury, if it believes its patent rights are being infringed. However, you should make no inference from the fact that a suit was filed or brought to trial. You are to consider this suit as a dispute between two parties of equal worth and standing in the community, and render your verdict based solely on the evidence presented in the trial.

I have told you previously that, in addition to T-Mobile, Nokia and Ericsson have intervened in this case on the side of T-Mobile after the case was filed. Technically, this means

---

[8] Final Jury Instructions at 6, *Pardalis*; *see also* Final Jury Instructions at 5, *General* Access; Final Jury Instructions at 5, *Atlas*; Final Jury Instructions at 5, *Finesse*.

that Nokia and Ericsson are known as "intervenors." Practically speaking, though, Nokia and Ericsson are working cooperatively with T-Mobile to defend against the allegations brought by Daingean, which have been brought against T-Mobile. However, to be clear, Nokia and Ericsson themselves have not been accused of infringement by Daingean in this case.[9] Throughout this trial, you may have heard T-Mobile, Nokia, and Ericsson be collectively referred to as "Defendants."[10]

In any legal action, facts must be proven by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on the Plaintiff for some issues and on the defendants for other issues. There are two burdens of proof that you will apply in this case: "preponderance of the evidence" and "clear and convincing evidence."[11]

Daingean has the burden of proving patent infringement by a preponderance of the evidence. Daingean also has the burden of proving damages for any patent infringement by a preponderance of the evidence. Finally, Defendants have the burden of proving patent exhaustion by a preponderance of the evidence. A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

Defendants have the burden of proving patent invalidity by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind an abiding conviction that the truth of the party's factual contentions is highly probable. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of

---

[9] Trial Tr. Vol. 5 at 1247:18–1248:4, *General Access Sols., Ltd. v. Cellco P'ship*, No. 2:22-CV-394-JRG (E.D. Tex. June 28, 2024), ECF No. 324.

[10] Final Jury Instructions at 5-6, *General Access*.

[11] Final Jury Instructions at 7, *Pardalis*; *see also* Final Jury Instructions at 5, *General Access*; Final Jury Instructions at 5, *Finesse*.

persuasion than is necessary for the preponderance of the evidence standard. If the proof establishes in your mind an abiding conviction in the truth of the matter, then the clear and convincing evidence standard has been met.

These two burdens of proof are not to be confused with the burden of proof known as beyond a reasonable doubt, which is the burden of proof applied in a criminal case, not in a civil case such as this. Clear and convincing evidence is a lower standard than beyond a reasonable doubt, but it is higher than a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the testimony of all the witnesses, regardless of who called them, and all the exhibits received into evidence during the trial, regardless of who may have produced them.

## CONTENTIONS OF THE PARTIES[12]

As I did at the beginning of the case, I will give you a summary of each side's contentions, and then I will provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I told you previously, this is an action for patent infringement. Daingean contends that T-Mobile infringes claim 12 of U.S. Patent No. 8,576,803, which you have consistently heard referred to throughout the trial as the '803 Patent.[13] I may also refer to it as the patent-in-suit or the asserted patent. Claim 12 of the '803 Patent is sometimes referred to as the asserted claim.

Daingean contends that T-Mobile has infringed the asserted claim by using in the United States 5G cellular base stations various cellular base stations for a communication system in the T-Mobile 5G cellular network.[14] Sometimes in these instructions I will refer to these base stations

---

[12] Final Jury Instructions at 6–7, *Mojo Mobility LLC v. Samsung Electronics Co.*, No. 2:22-CV-00398-JRG-RSP (E.D. Tex. Sep. 12, 2024) (not filed); *see also* Final Jury Instructions at 50–51, *G+ Commc'ns, LLC v. Samsung Elecs. Co.*, No. 2:22-CV-00078-JRG (Feb. 2, 2024), ECF No. 592 (Trial Tr.); Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction B.1.

[13] Final Jury Instructions at 8, *Pardalis*; *see also* Final Jury Instructions at 6, *General* Access; Final Jury Instructions at 6, *Atlas*; Final Jury Instructions at 6, *Finesse*.

[14] Defendants' position: This case is about alleged infringement by base stations. True, the court construed the preamble as limiting at Defendants' request because the preamble provides antecedent basis for limitations in the body of the claim, including by reciting mobile subscriber stations transmitting channel estimation signals. Thus, infringement undisputedly requires a mobile subscriber station.

But that does not change that the claim is directed to, and recites, "[a] base station." Phones transmitting signals were undisputedly not new and make up no part of the claim's alleged inventive features. And every one of Daingean's witnesses has confirmed that claim 12 and this lawsuit concern base stations. Both sides' experts agree that the relevant accused functionality is in the accused base stations and that all allegedly inventive aspects of claim 12 are embodied in base stations. Thus, it is accurate to describe the accused products as the accused 5G base stations.

this system as the accused products. Daingean contends that the accused products literally infringe claim 12 of the '803 Patent. Daingean contends that it is entitled to money damages in the form of a reasonable royalty for T-Mobile's infringement.[15] Daingean has the burden to prove these issues by a preponderance of evidence.[16]

Defendants deny that the accused products infringe the asserted claim of the '803 Patent. Defendants deny that T-Mobile owes Daingean any damages.

Defendants further contend that the asserted claim of the '803 patent is invalid because it is not new, because it was obvious, and because it lacks an adequate written description. Defendants have the burden to prove invalidity by clear and convincing evidence.[17]

Defendants further contend that Nokia has a license to the '803 Patent that permits Nokia to sell the accused base stations to T-Mobile and that Daingean cannot enforce the asserted claim

---

Daingean's position: In claim construction Defendants took the position that the preamble of claim 12 is limiting (Dkt. 94 at 18) and accordingly the Court construed the preamble to be limiting. Dkt. 145 at 13-14. The preamble to claim 12 of the '803 Patent requires a communication system having base stations and subscriber stations. Therefore, the accused product is the T-Mobile network and not just base stations.

The fact that certain parts of the accused communication system (e.g., phones) were "not new" and//or did not include "inventive features" does not change the claim scope which includes both base stations and subscriber stations. Consistent with the Court's claim construction order, Daingean's expert testified that the asserted claim relates to "a communication system that has base stations and mobile subscriber stations" and that the communication system that meets the claim limitations is "T-Mobile's 5G cellular network." *See, e.g.,* Trial Transcript, Vol. 2 (July 8, 2025) at 339:23-340:5, 348:20-349:2.

More generally, Defendants are attempting to redefine the accused products from something that differs from Daingean's infringement theory. Defendants should not be allowed to redefine Daingean's infringement theory in a manner that is inconsistent with their own claim construction position.

[15] Final Jury Instructions at 7, *General* Access; Final Jury Instructions at 7, *Finesse*.

[16] Final Jury Instructions at 7, *General* Access; Final Jury Instructions at 7, *Finesse*.

[17] Final Jury Instructions at 9, *Pardalis*; *see also* Final Jury Instructions at 7, *General* Access; Final Jury Instructions at 7, *Finesse*.

of the '803 patent against Nokia base stations because Nokia's authorized sales of base stations to T-Mobile exhaust Daingean's patent rights. Daingean denies that Nokia has a license under the '803 patent authorizing it to sell base stations to T-Mobile and denies that Nokia's sales of base stations to T-Mobile exhaust Daingean's patent rights. Defendants have the burden to prove both that Nokia has a license to the '803 Patent and that Nokia's sales of base stations to T-Mobile exhaust Daingean's patent rights their exhaustion defense[18] by a preponderance of the evidence.

If you decide that the asserted claim has been infringed and is not invalid, and that such infringement is not covered by an exhaustion defense,[19] you will then need to decide the amount

---

[18] Defendants' position: Defendants assert only an exhaustion defense. License and exhaustion are not distinct issues for the jury to resolve, as this instruction suggests. Rather, as the exhaustion instruction proposed by Defendants makes clear, Nokia's license is an element of the exhaustion defense.

Daingean's position: There is a dispute in this case as to whether Nokia had a license to the '803 Patent. Exhaustion would only apply if the jury determines that Nokia was in fact licensed. Further, the Court has struck defendants' expert's exhaustion analysis. *See* Dkt. 420 at 5.

[19] Daingean's position: This instruction is highly prejudicial to Daingean and will likely confuse the jury. First, this instruction is unnecessary and duplicative because exhaustion is already referenced in the prior paragraph. Moreover, Defendants' exhaustion defense only applies to base stations supplied by Nokia. Base stations supplied by Ericsson are not covered by the exhaustion defense. Thus, a finding of exhaustion does not foreclose liability as to the use of Ericsson supplied base stations in the T-Mobile network and hence, exhaustion is effectively a damages issue in this case. There is proposed language in the Damages section of the jury instructions that addresses how to apportion out the Nokia base stations should the jury find exhaustion. Including the instruction here is likely to confuse the jury into incorrectly concluding that they need not award any damages if they decide there is exhaustion.

Defendants' position: This instruction is appropriate, accurate, and not prejudicial. Exhaustion is not a "damages issue" but a defense to liability even though it does not apply to all accused products. The reference to "such infringement" makes clear that if all infringement found by the jury is exhausted (if, for instance, the jury finds infringement based only on Nokia base stations, but finds that Defendants showed exhaustion), then as this instruction indicates, the jury should not reach damages; conversely, if the jury finds infringement based on products to which exhaustion is inapplicable (and finds no invalidity), then "such infringement" necessarily will not be covered by exhaustion, and the jury will understand that it should consider damages. This is also made clear by the proposed conditioning language in the verdict form telling the jury that if it finds exhaustion, it should still proceed to damages but simply not award damages for Nokia base stations.

of money damages, if any, to be awarded to Daingean to compensate it for that infringement.[20]

---

[20] Final Jury Instructions at 9, *Pardalis*; *see also* Final Jury Instructions at 7, *General* Access; Final Jury Instructions at 7, *Finesse*.

## PERSON OF ORDINARY SKILL IN THE ART[21]

Several times in my instructions, I will refer to a person of ordinary skill in the field of the invention. It is up to you to decide the level of ordinary skill in the field of the invention.

In deciding what the level of ordinary skill is, you should consider all of the evidence introduced at trial, including but not limited to:

1. the levels of education and experience of the inventors and other persons actively working in the field;

2. the types of problems encountered in the field;

3. prior art solutions to those problems;

4. the rapidity with which innovations are made; and

5. the sophistication of the technology.

The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.[22]

---

[21] Final Jury Instructions at 7–8, *Mojo Mobility LLC v. Samsung Electronics Co.*, No. 2:22-CV-00398-JRG-RSP (E.D. Tex. Sep. 12, 2024) (not filed).

[22] Defendants' position: This instruction accurately states the governing law and would help the jury in understanding the perspective of a POSITA. *See, e.g.*, AIPLA, Model Patent Jury Instructions 7.3 (2024); *In re Rouffet*, 149 F.3d 1350, 1357 (Fed. Cir. 1998); *Custom Accessories, Inc. v. Jeffrey-Allan Industries, Inc.*, 807 F.2d 955, 963 (Fed. Cir. 1986); *Pentec, Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 313 (Fed. Cir. 1985); *see also* Final Jury Instructions at 8, *Mojo Mobility LLC v. Samsung Electronics Co.*, No. 2:22-CV-00398-JRG-RSP (E.D. Tex. Sep. 12, 2024) (not filed) ("A person of ordinary skill in the art is a hypothetical person who is presumed to be aware of all the relevant prior art at the time of the claimed invention."). Reasonableness is an archetypal fact issue that juries routinely assess (with the aid of expert testimony), and the jury is well equipped to make any necessary fact finding on "reasonably relevant" art.

---

Daingean's position: Defendants have elected certain prior art references to be presented during trial and this instruction falsely suggests that the jury should go beyond the prior art presented at trial to determine what other prior art is "reasonably relevant". Moreover, this instruction causes jury confusion by injecting ambiguous terminology such as "reasonably relevant."  Therefore, this instruction should not be included. *See, e.g.,* Final Jury Instructions at 12, *Pardalis*; Final Jury Instructions at 9, *Finesse*; Federal Circuit Bar Association Model Patent Jury Instructions (May 2020), Instruction B.4.3.

## PATENT CLAIMS[23]

Before you can decide many of the issues in this case, you will need to understand the role of the patent claims.

The claims of a patent are numbered sentences at the end of the patent. The claims define Daingean's rights under the law. The claims are important, because it is the words of the claims themselves that define what the patent covers. The figures and the text in the rest of the patent provide a description or examples of the invention, and they provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.

Each claim is effectively treated as if it were its own separate patent, and each claim may cover more or less than any other claim. Therefore, what a patent covers depends on what each of its claims covers.

---

[23] Final Jury Instructions at 8, *Mojo Mobility LLC v. Samsung Electronics Co.*, No. 2:22-CV-00398-JRG-RSP (E.D. Tex. Sep. 12, 2024) (not filed); *see also* Federal Circuit Bar Association Model Patent Jury Instructions § 2.1 (May 2020).

## CLAIM CONSTRUCTION[24]

You first need to understand what the asserted claim covers in order to decide whether or not there is infringement of that claim and to decide whether or not the claim is invalid. And the first step is to understand the meaning of the words used in the patent claim. The law says that it is my role to define the terms of the claims, but it is your role to apply my definitions to the issues that you are asked to decide in this case.

Accordingly, as I explained at the beginning of the case, I have determined the meaning of certain claim terms. I have provided to you my definitions of those claim terms in your jury notebooks.[25] I incorporate those definitions by reference into my jury instructions. You must accept my definitions of these words in the claims as being correct, and it is your job to take these definitions that I have supplied and apply them to the issues that you are asked to decide, including the issues of infringement and invalidity.

You should disregard any evidence presented at the trial that contradicts or is inconsistent with the constructions and the definitions that I have given you.

For claim limitations that I have not construed—that is, limitations that I have not defined or interpreted for you—you are to use the plain and ordinary meaning of that term as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent at the time of the alleged invention in light of the specification. The meanings of the words of the patent claims must be the same when deciding both infringement and invalidity.

---

[24] Final Jury Instructions at 8–9, *Mojo Mobility LLC v. Samsung Electronics Co.*, No. 2:22-CV-00398-JRG-RSP (E.D. Tex. Sep. 12, 2024) (not filed).

[25] Final Jury Instructions at 10, *Pardalis*; *see also* Final Jury Instructions at 8, *General* Access; Final Jury Instructions at 7, *Atlas*; Final Jury Instructions at 8, *Finesse*.

You have been provided with a copy of the asserted patent. It is inside your juror notebooks, and you may use it and refer to it during your deliberations.

## CLAIM LIMITATIONS[26]

I will now explain how a claim defines what it covers. A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a product[27] satisfies each of the requirements in that sentence, then it infringes the claim. There can be several claims in a patent. A claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by claim basis.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."

When a product meets all the requirements of a claim, the claim is said to "cover" that product; and that product is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product.

If a product is missing even one limitation or element of a claim, the product is not covered by that claim. If the product is not covered by the claim, the product does not infringe the claim.

---

[26] Final Jury Instructions at 9–10, *Mojo Mobility LLC v. Samsung Electronics Co.*, No. 2:22-CV-00398-JRG-RSP (E.D. Tex. Sep. 12, 2024) (not filed).

[27] Final Jury Instructions at 8, *Atlas*.

## INFRINGEMENT[28]

I will now instruct you on infringement in more detail. If a person or corporation uses within the United States what is covered by a patent claim without the patent owner's permission, that person or corporation is said to infringe the patent.[29]

To determine whether there is infringement, you must compare the asserted patent claim, as I have defined it, to the accused products. You should not compare the accused products with any specific example set out in the patent or with the prior art in reaching your decision on infringement. In deciding infringement, the only correct comparison is between the accused products and the limitations of the asserted claim as the Court has construed it.[30] T-Mobile is liable for infringement if you conclude that any accused feature in the T-Mobile network infringes.

You must reach your decision as to infringement based on my instructions about the meaning and the scope of the claim, the legal requirements for infringement, and the evidence presented to you by both of the parties.

I will now instruct you on the specific rules that you must follow to determine whether Daingean has proven by a preponderance of the evidence that T-Mobile has directly infringed the asserted claim by using the accused products in the United States.[31]

---

[28] Final Jury Instructions at 12, *Mojo Mobility LLC v. Samsung Electronics Co.*, No. 2:22-CV-00398-JRG-RSP (E.D. Tex. Sep. 12, 2024) (not filed).

[29] Final Jury Instructions at 10, *Atlas*; Final Jury Instructions at 11, *Finesse.*

[30] Final Jury Instructions at 13, *Pardalis*; *see also* Final Jury Instructions at 10, *Atlas*; Final Jury Instructions at 11, *Finesse.*

[31] Final Jury Instructions at 11, *General Access*; Final Jury Instructions at 10, *Atlas*; Final Jury Instructions at 11, *Finesse.*

## DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT"[32]

Daingean contends that T-Mobile directly infringed the asserted claim by "literal infringement."

A patent can be directly infringed even if the alleged direct infringer did not have knowledge of the patent and without the direct infringer knowing that what it did was infringement of the claim.[33] A patent may also be directly infringed even though the accused direct infringer believed in good faith that what it did was not an infringement of the patent.[34] Infringement does not require proof that a party copied its product from the asserted claim.[35]

To prove direct infringement by literal infringement, Daingean must prove by a preponderance of the evidence that the accused products include each and every limitation of the

---

[32] Final Jury Instructions at 13, *Mojo Mobility LLC v. Samsung Electronics Co.*, No. 2:22-CV-00398-JRG-RSP (E.D. Tex. Sep. 12, 2024) (not filed); *see also* Federal Circuit Bar Association Model Patent Jury Instructions § 3.1a (May 2020).

[33] Final Jury Instructions at 14, *Pardalis*; *see also* Final Jury Instructions at 11, *General Access*; Final Jury Instructions at 10, *Atlas*; Final Jury Instructions at 11, *Finesse*.

[34] Final Jury Instructions at 14, *Pardalis*; *see also* Final Jury Instructions at 11, *General Access*; Final Jury Instructions at 10, *Atlas*; Final Jury Instructions at 11, *Finesse*.

[35] Final Jury Instructions at 14, *Pardalis*; *see also* Final Jury Instructions at 11, *General Access*; Final Jury Instructions at 11, *Finesse*.

Defendants' position (for this whole paragraph): These instructions are unhelpful, unnecessary to understanding literal infringement, and inapplicable on the facts. This Court must give a requested instruction "only if the instruction (1) was a substantially correct statement of law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the party's ability to present a given claim." *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 484 (5th Cir. 2021) (cleaned up). These instructions about Defendants' subjective state of mind and copying are not part of the standard for literal infringement, are not needed for Daingean to present its claims, and are not applicable as Defendants do not argue subjective "good faith," lack of "copying," or the like as defenses.

Daingean's response (for this whole paragraph): Defendants have repeatedly asserted at trial that Daingean did not reach out to defendants to inform them of the patent and/or engage in licensing discussions. These arguments falsely suggest to the jury that there is a need to put an infringer on notice regarding infringement. Accordingly, this instruction is necessary.

asserted claim[36] T-Mobile used within the United States a product that meets each and every limitation of the asserted claim and did so without the permission of Daingean during the time the asserted patent was in force.[37] To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly.[38] To determine whether the accused products directly infringe the asserted claim, you must compare the accused products with each of the limitations of the asserted claim to determine whether all of the requirements of that claim are met.[39] To use a system for purposes of infringement, a party must put the invention into service,

---

[36] Final Jury Instructions at 14, *Pardalis*; *see also* Final Jury Instructions at 12, *General Access*; Final Jury Instructions at 12, *Finesse*.

[37] Defendants' Position: Final Jury Instructions at 13, *Mojo Mobility LLC v. Samsung Electronics Co.*, No. 2:22-CV-00398-JRG-RSP (E.D. Tex. Sep. 12, 2024) (not filed); *see also* Federal Circuit Bar Association Model Patent Jury Instructions § 3.1a (May 2020). This language accurately states the law and is a standard part of this Court's instructions on literal infringement (and model instructions on literal infringement, like the FCBA). Absence of permission is statutorily required for infringement. 35 U.S.C. § 271(a) ("[W]hoever *without authority* … uses … within the United States … any patented invention during the term of the patent therefor, infringes the patent." (emphasis added)).

Daingean's Position: T-Mobile is not asserting a license defense in this case. Therefore, this instruction is unhelpful, unnecessary to understanding literal infringement, and inapplicable to the facts. Moreover, defendants seek to instruct the jury on damages during the infringement section with the language "and did so without the permission of Daingean during the time the asserted patent was in force." This is blurring infringement and damages. There will already be an instruction on the potential impact of the Mitsubishi-Nokia cross-license in the Damages section of the instructions.

[38] Defendants' Position: *Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1360 (Fed. Cir. 2019) (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995)); *accord Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1313 (Fed. Cir. 2016); *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1319 (Fed. Cir. 2015).

Daingean's Position: This instruction is unnecessary because the remaining portions of this instruction provide the jury with guidance regarding literal infringement. Moreover, the use of the word "exactly" is prejudicial and confusing to the jury as it seems to suggest an additional requirement beyond each and every limitation being present.

[39] Final Jury Instructions at 14, *Pardalis*; Final Jury Instructions at 12, *Finesse*.

i.e., control the system as a whole and obtain benefit from it.[40] To infringe a claim that recites capability and not actual operation, an accused device need only be capable of operating in the described mode.[41] Thus, depending on the claims, an accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation.[42] But a device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim. Thus, T-Mobile did not infringe a claim that recites capability if it could not readily activate the allegedly infringing functionality in an accused product, or if it could only infringe if it modified an accused product to operate as recited in the asserted claim.[43] And absent an express limitation to the contrary, any

---

[40] *Centillion Data Sys., LLC v. Qwest Commun. Intern., Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).

[41] *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010); *Fantasy Sports Props. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002); *United Servs. Auto Ass'n v. PNC Bank N.A.*, 2022 U.S. Dist. LEXIS 82529, at *13-14 (E.D. Tex. Apr. 17, 2022).

[42] *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010); *Fantasy Sports Props. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002); *United Servs. Auto Ass'n v. PNC Bank N.A.*, 2022 U.S. Dist. LEXIS 82529, at *13-14 (E.D. Tex. Apr. 17, 2022).

[43] Defendants' position (for preceding two sentences): These sentences concern Daingean's purported "second" infringement theory for Ericsson Interference Sensing (RAIT), which does not depend on actual "use" of this accused feature but requires only use of an apparatus (base station) capable of meeting the claim elements. An instruction on capability is inapplicable and should not be given for four reasons.

*First*, Daingean's "capability" theory is not viable because, on the undisputed facts, Ericsson's base stations in T-Mobile's network were incapable of implementing the interference-sensing feature. Thus, unlike in the *Finjan* case cited by Daingean, but like in *Provisur Techs., Inc. v. Weber, Inc.*, "[t]his is not an infringement scenario where customers can simply activate the infringing configuration." 119 F.4th 948, 954 (Fed. Cir. 2024) (reversing denial of JMOL of noninfringement on facts like these). Defendants briefed this issue in their summary-judgment motion challenging alleged infringement by Ericsson Interference Sensing. *See, e.g.*, ECF No. 247 at 3–5. The magistrate judge did not expressly rule on this issue but denied summary judgment base *solely* on Daingean's purported "first" theory for Ericsson Interference Sensing, which depends on actual use (during a brief test controlled by Ericsson, not T-Mobile, involving two or three base stations in New York). ECF No. 384.

use of an accused device that meets all the limitations of an apparatus claim written in structural terms infringes that apparatus claim.[44]

---

*Second*, Defendants object to the phrase "depending on the claims," which improperly suggests that it is up to the jury to determine what kind of claim is at issue. It is not; that is a legal question for the court. The instruction should not suggest that the jury has a role in determining whether a given infringement principle applies to the claim.

*Third*, claim 12 is not drawn to capability. The claim describes a *base station* (*i.e.*, an apparatus) that *transmits* data (*i.e.*, actual function/operation) based on specified things. It is therefore an invalid mixed-class claim. Defendants recognize that the court construed the claim as reciting a "base station configured to transmit…," a construction urged by neither party. ECF No. 145 at 19–21. Defendants renew their objection to that construction and object to a "capability" instruction on that basis.

*Fourth*, and at any rate, a specific instruction on capability is superfluous and unnecessary to Daingean's infringement case. *See HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 484 (5th Cir. 2021). This Court frequently instructs juries on claims drawn to capability without specifically instructing the jury on *Finjan*'s capability language in addition to the generally applicable standard for literal infringement. The jury will be instructed on the "configured to" claim construction, and the parties can dispute whether the accused base stations are in fact "configured to" implement Ericsson Interference Sensing without this additional language.

Conditionally, if the Court gives Daingean's instruction on capability, Defendants' request the above instructions from in *Provisur* clarifying that an accused device does not infringe just because it can be altered or modified to meet all the claim elements.

Daingean's position (for preceding two sentences): *See* FN 44.

[44] Daingean's Position: Defendants contend Daingean proposes two contradictory instructions—one regarding capability and one regarding use. Both instructions are appropriate because Daingean is presenting two different infringement theories. First, T-Mobile infringes by using the patented system. Defendants moved for summary judgment of non-infringement based on this use, and the Court denied their motion. *See* Dkt. 384 at 3. Second, T-Mobile infringes by deploying over 37,000 base stations with Interference Sensing software (RAIT) that provides the claimed capabilities. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010) ("An accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of noninfringing modes of operation."); *Paragon Sols., LLC v. Timex Corp.*, 566 F.3d 1075, 1091 (Fed. Cir. 2009) ("Absent an express limitation to the contrary, *any* use of a device that meets all of the limitations of an apparatus claim written in structural terms infringes that apparatus claim." (emphasis in original)). Finally, Defendants' contention that the claim does not cover a base station "configured to" transmit data is incorrect. The Court has construed the limitation "a base station … said base station transmits data" to mean "a base station … said base station configured to transmit data." Dkt. 145 at 19-21.

Defendants' Position: This instruction on claims "written in structural terms" is inapplicable and should not be given for similar reasons to Daingean's proposed instructions on claims drawn to

A claim element is literally present if it exists in the accused product as it is described in the claim language either as I have explained it to you or, if I did not explain it, according to its plain and ordinary meaning as understood by one of ordinary skill in the art.[45]

If any element recited in a claim is not found in an accused product, then you must find that particular product does not infringe that claim. But if an accused product has each and every one of the claim limitations, infringement of that claim is shown even if the product contains additional features or elements not required by the claim.[46]

---

capability; Defendants repeat their objections to that instruction here. In addition, this instruction is particularly confusing and unhelpful to the jury because the jury lacks any basis for understanding "an apparatus claim written in structural terms," a series of patent-law terms of art. Indeed, this instruction ultimately adds nothing material to the standard instructions on literal infringement because it simply repeats (with additional legal jargon added in) that a device literally infringes if it meets all the claim limitations.

[45] Final Jury Instructions at 15, *Pardalis*; *see also* Final Jury Instructions at 13, *General Access*; Final Jury Instructions at 12, *Atlas*; Final Jury Instructions at 12, *Finesse*.

[46] Final Jury Instructions at 15, *Pardalis*; Final Jury Instructions at 13, *General Access*; Final Jury Instructions at 12, *Finesse*.

## INVALIDITY[47]

I will now instruct you on the rules that you must follow in deciding whether or not Defendants have proven by clear and convincing evidence that the asserted claim of the '803 patent is invalid. Patent invalidity is a defense to patent infringement. Invalidity and infringement are separate and distinct issues that must be separately decided by you.

An issued United States patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, which you have heard referred to throughout this trial as the PTO or the Patent Office, acted correctly in issuing the patent. However, there is a possibility that mistakes were made at the PTO. Therefore, the presumption of validity can be overcome if Defendants[48] This presumption of validity extends to all issued United States Patents.[49] In order to overcome this presumption of validity, Defendants must establish by clear and convincing evidence that the asserted claim is invalid.[50] Therefore, you the jury must determine whether Defendants have proved that the asserted claim is invalid.

---

[47] Final Jury Instructions at 16–17, *Mojo Mobility LLC v. Samsung Electronics Co.*, No. 2:22-CV-00398-JRG-RSP (E.D. Tex. Sep. 12, 2024) (not filed).

[48] Final Jury Instructions at 16–17, *Mojo Mobility LLC v. Samsung Electronics Co.*, No. 2:22-CV-00398-JRG-RSP (E.D. Tex. Sep. 12, 2024) (not filed) (stating Defendants' proposal verbatim); Federal Circuit Bar Association Model Patent Jury Instructions § A.1 (May 2020) ("The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. In addition, there is the possibility that mistakes were made or that information was overlooked.").

Daingean's position: This instruction is highly prejudicial to Daingean because it implicitly rebuts the presumption of validity. The remaining language accurately captures the law. This language would only confuse the jury.

[49] Final Jury Instructions at 18, *Pardalis*; *see also* Final Jury Instructions at 13, *General Access*; Final Jury Instructions at 15, *Finesse*.

[50] Final Jury Instructions at 18, *Pardalis*; *see also* Final Jury Instructions at 13, *General Access*; Final Jury Instructions at 15, *Finesse*.

The claim must be considered as a whole.[51] Claims are construed in the same way for determining infringement as for determining invalidity. You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity.

---

[51] *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1548 (Fed. Cir. 1983) ("Each claimed invention must be considered as a whole.").

Defendants' position: This instruction is out of context and out of place here, and therefore unhelpful to the jury and unneeded. The specific instructions on grounds for invalidity provide the needed guidance, including, where appropriate, the direction to consider the whole claim.

## PRIOR ART[52]

At times, you will hear me make references to the prior art.

A previous device, system, method, publication, or patent that predates the claimed invention[53] is generally called "prior art." Prior art may include items that were publicly known or that had been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention. Prior art also includes the knowledge or use of an invention by a person of ordinary skill in the art in the United States prior to the date of the invention.

In evaluating the prior art to determine whether invalidity has been proven by clear and convincing evidence, you may consider whether that prior art was or was not before the PTO.[54] If you decide that prior art is different and more relevant than the prior art considered by the PTO, you may weigh that prior art more heavily when considering whether Defendants carried their burden of proving invalidity.[55]

---

[52] Final Jury Instructions at 17, *Mojo Mobility LLC v. Samsung Electronics Co.*, No. 2:22-CV-00398-JRG-RSP (E.D. Tex. Sep. 12, 2024) (not filed); *see also* Federal Circuit Bar Association Model Patent Jury Instructions § 4.3a-3 (May 2020).

[53] Final Jury Instructions at 19, *Pardalis*; *see also* Final Jury Instructions at 13, *General Access*; Final Jury Instructions at 15, *Finesse*.

[54] Final Jury Instructions at 17, *Mojo Mobility LLC v. Samsung Electronics Co.*, No. 2:22-CV-00398-JRG-RSP (E.D. Tex. Sep. 12, 2024) (not filed); Final Jury Instructions at 19, *Pardalis*; *see also* Final Jury Instructions at 16, *Finesse*.

[55] Defendants' Position: Federal Circuit Bar Association Model Patent Jury Instructions § 4.3b-1 (May 2020). The jury cannot merely be told that it may consider whether prior art was before the PTO without any further guidance—it must be told *how* to consider that fact.

Daingean's position: This instruction is unnecessary and confusing to the jury. For instance, it requires the jury to make a determination as to whether a prior art reference is "more relevant than the prior art considered by the PTO." Moreover, it is unclear what it means for the jury to weight a prior art reference "more heavily."

In deciding validity, the only correct comparison is between the prior art and the limitations of the asserted claim. It is improper to compare the prior art to the accused product.

## ANTICIPATION[56]

I will now instruct you on how to determine whether the asserted claim of the asserted patent is invalid as being anticipated. In order for someone to be entitled to a patent, the invention must actually be new, and the inventor must not have lost his or her rights by delaying the filing of an application claiming the invention. In general, inventions are new when the identical product has not been made, used, or disclosed before.

Defendants contend that claim 12 of the '803 patent is invalid because the claimed invention is not new. In other words, Defendants contend that the asserted claim is anticipated by prior art. Anticipation requires that all elements of a patent claim be disclosed in a single prior art reference. Also, the single prior art reference must disclose all of the elements of the claim arranged or combined in the same way as in the claim, as the claim has been construed or interpreted by the Court.

Defendants must prove by clear and convincing evidence that the asserted claim was anticipated by the prior art reference.

To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the elements or requirements of the claim must have been disclosed, either expressly or impliedly, to a person having ordinary skill in the art of the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.

Keep in mind that Defendants may not establish anticipation by arguing that the accused products practice the prior art, or by comparing the accused products to a prior art reference.

---

[56] Final Jury Instructions at 68–69, *G+ Commc'ns, LLC v. Samsung Elecs. Co.*, No. 2:22-CV-00078-JRG (Feb. 2, 2024), ECF No. 592 (Trial Tr.); Final Jury Instructions at 50–52, *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-CV-00310-JRG (E.D. Tex. Mar. 24, 2023), ECF No. 534 (Trial Tr.).

## OBVIOUSNESS[57]

Defendants also contend that the asserted claim of the '803 Patent is invalid as obvious. I will now instruct you on how to determine whether the asserted claim is invalid as obvious.

Even though an invention may not have been identically disclosed or identically described in a single prior art reference before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made. Defendants have the burden of establishing obviousness by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of technology of the patent.[58]

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field that someone would have had at the time the invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention. The existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. The skill of the actual inventor is not necessarily relevant because inventors may possess something that distinguishes them from persons having ordinary skill in the art.

The scope and content of the prior art for deciding whether the invention was obvious include at least prior art in the same field as the claimed invention. It also includes prior art from

---

[57] Final Jury Instructions at 17–21, *Mojo Mobility LLC v. Samsung Electronics Co.*, No. 2:22-CV-00398-JRG-RSP (E.D. Tex. Sep. 12, 2024) (not filed); *see also* Federal Circuit Bar Association Model Patent Jury Instructions § 4.3c (May 2020).

[58] Final Jury Instructions at 22, *Pardalis*; Final Jury Instructions at 16, *Finesse.*

different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

Teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ. A person of ordinary skill may be able to fit the teachings of multiple pieces of prior art together like pieces of a puzzle. The person of ordinary skill in the art would have the capability of understanding the scientific and engineering principles applicable to the pertinent art.

In considering whether a claimed invention is obvious, you may but are not required to find obviousness if, at the time invention was made, there was a reason that would have prompted a person having ordinary skill in the field to combine the known elements in a way the claimed invention does, accounting for such factors as:

1.    Whether the claimed invention was merely the predictable result of using prior art elements according to their known function;

2.    Whether the claimed invention provides an obvious solution to a known problem in the relevant field;

3.    Whether the prior art teaches or suggests the desirability of combining elements in the claimed invention;

4.    Whether the prior art teaches away from combining elements in the claimed invention;

5.    Whether it would have been obvious to try the combination of elements in the claimed invention, like when there is a design need or market pressure to solve a problem, and there are a finite number of identified, predictable solutions; and

6.      Whether the change resulted more from design incentives or other market forces.

To find the invention obvious, you must find that the prior art provided a person having ordinary skill in the field a reasonable expectation of success in combining the teachings of the prior art to result in the claims invention.

In support of obviousness, you may also consider whether others independently invented the claimed invention at roughly the same time as the date of the invention. In making these determinations, a person of ordinary skill uses simple common sense and can rely upon the inferences and creative steps that a person of ordinary skill in the art would employ. Also, Defendants do not need to show that one of ordinary skill would actually have combined the physical structures of two references, as long as it would have been obvious to a person of ordinary skill in the art to combine the teachings at the time of the invention. In determining whether the claimed invention was obvious, do not use hindsight, and consider only what was known at the time of the invention. In other words, you should not consider what a person of ordinary skill in the art would know now or what has been learned from the teachings of the asserted patent.

In making these assessments, you should account for any objective evidence, sometimes called "secondary considerations," that may have existed at the time of the invention, and afterward, that may shed light on the obviousness or not of the claimed invention. The following are possible secondary considerations, but it is up to you to decide whether secondary considerations of non-obviousness exist at all:

1.      Whether the invention was commercially successful as the result of the merits of the claimed inventions, rather than the result of design needs or market pressure, advertising, or similar activities;

2.      Whether the invention satisfied a long-felt need;

31

3.      Whether others in the field praised the claimed invention;

These factors are relevant only if there is a connection, or "nexus," between the factors and the patented features of the invention.[59] Daingean has the burden of establishing this connection or "nexus." Moreover, even if you conclude that some of the above indicators of objective evidence have been established, those factors should be considered along with all the other evidence in the case in determining whether Defendants have proven that the claimed invention would have been obvious.

---

[59] Final Jury Instructions at 26, *Pardalis*; Final Jury Instructions at 19, *Finesse*.

## WRITTEN DESCRIPTION[60]

Defendants also contend that the asserted claim of the '803 patent is invalid for failure to provide an adequate written description of the full scope of the claim. Defendants must prove by clear and convincing evidence that the '803 patent does not describe the full scope of the asserted claim.[61] As I have previously explained, to obtain a patent, one must first file an application with the PTO. The process of obtaining a patent is called patent prosecution. The application submitted to the PTO contains within it what is called a specification.

The patent laws require that a patent specification contain an adequate written description of the claimed invention. When determining whether the specification meets this requirement, you must view the claim as a whole.[62] The written-description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize, from reading the patent specification (which includes the originally filed claims), that the inventor possessed the subject matter finally claimed in the patent.[63]

To succeed on its claim of lack of adequate written description, Defendants must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification as of June 1, 2007 would not have understood that the specification describes the full

---

[60] Final Jury Instructions at 76–77, *G+ Commc'ns, LLC v. Samsung Elecs. Co.*, No. 2:22-CV-00078-JRG (Feb. 2, 2024), ECF No. 592 (Trial Tr.); Final Jury Instructions at 1317–19, *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-CV-00463-JRG (E.D. Tex. Apr. 21, 2023), ECF No.478 (Trial Tr.); *see also* Federal Circuit Bar Association Model Patent Jury Instructions § 4.2a (May 2020).

[61] Final Jury Instruction at 26, *Rembrandt Wireless Tech., LP v. Samsung Electronics Co., Ltd. et al.*, No. 2:13-cv-00213-JRG-RSP (E.D. Tex. Feb. 13, 2015), ECF. No. 300 (Trial Tr.).

[62] Final Jury Instructions at 15, *General Access*.

[63] Final Jury Instructions at 15, *General Access*; Final Jury Instructions at 27, *Rembrandt*.

33

scope of the invention as it is claimed in the claims of the issued patent. If a patent claim lacks adequate written description, it is invalid.

In deciding whether the asserted claim of the '803 patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of the technology of the patent as of June 1, 2007. The specification must describe the full scope of the claimed invention, including each element thereof.

The written description does not have to be in the exact words of the claim. The requirement may be satisfied by any combination of words, structures, figures, diagrams, formulas, et cetera, contained in the patent specification. Adequate written description does not require either examples or an actual reduction to practice of the claimed invention.

However, a mere wish or plan for obtaining the claimed invention is not adequate written description. Rather, the level of disclosure required depends on a variety of factors, such as the existing knowledge in the particular field, the scope and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.

## LICENSE (NOKIA)

Defendants contend that Nokia has a license to the '803 Patent through the Patent Cross License Agreement between Mitsubishi and Nokia. In order to prove that Nokia has a license from Mitsubishi to the '803 Patent, Defendants must prove the '803 Patent is an "Essential Patent" under the Patent Cross License Agreement between Mitsubishi and Nokia.[64] Defendants bear the burden to prove Nokia is licensed to the '803 Patent by a preponderance of the evidence.[65]

---

[64] Daingean's position: This instruction is necessary because of the unique structure of the Nokia/Mitsubishi Cross License and the Court's prior summary judgment rulings regarding the agreement. The Mitsubishi/Nokia Cross License provides three separate ways Nokia or T-Mobile could be licensed, but only one is disputed: (1) the '803 Patent can be an "Essential Patent" under the agreement (Dkt. 181-2 at §1.07); (2) Nokia can "select" the '803 Patent as one of seven non-Essential Patents (*id.*); and (3) customers of Nokia (such as T-Mobile) can be licensed under §2.07 of the agreement (*id.* at §2.07). The only option that is disputed is (1) – whether the '803 Patent is an "Essential Patent." On (2), the Court granted summary judgment that Nokia's selection of the '803 Patent was not valid. *See* Dkt. 386 at 5-6. On (3), Defendants confirmed to Daingean that T-Mobile will not argue at trial that T-Mobile is separately licensed under §2.07 of the agreement. Therefore, this instruction is needed to prevent jury confusion because only one of the three possible license paths are disputed. Moreover, this instruction is necessary because the existence of a license to Nokia lays predicate to both T-Mobile's exhaustion defense and failure to mark allegations.

Defendants' position: This instruction is unneeded and wholly subsumed within Defendants' proposed exhaustion instruction (below). Defendants assert only an exhaustion defense. License and exhaustion are not distinct issues for the jury to resolve, as this instruction suggests. Rather, as the exhaustion instruction proposed by Defendants makes clear, Nokia's license is an element of the exhaustion defense.

[65] *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1576 (Fed. Cir. 1997).

## PATENT EXHAUSTION[66]

Defendants contend that the asserted claim of the '803 patent is unenforceable against Nokia base stations under the doctrine of patent exhaustion. When a patented article is first sold by the patent owner or with the patent owner's permission, the rights of the patent owner in that article are "exhausted." Patent exhaustion is an affirmative defense to patent infringement.

To prevail on the defense of patent exhaustion, Defendants must prove both of the following by a preponderance of the evidence:

1. That, if you find infringement of the '803 patent involving Nokia base stations, those Nokia base stations substantially embody the asserted claim of the '803 patent. Nokia base stations substantially embody the asserted claim of the '803 patent if (a) the reasonable and intended use of those base stations would practice the asserted claim and (b) the base stations include all the inventive features of the asserted claim.

2. That under the 2017 Patent Cross License Agreement between Nokia and Mitsubishi, Nokia was authorized to sell, and did sell, its base stations to T-Mobile. To prove that Nokia was authorized to sell its base stations to T-Mobile under the

---

[66] Edward D. Manzo, Patent Jury Instruction Handbook § 4:3 (May 2023 update) (citing Jury Instructions, *Lexmark International, Inc. v. Static Control Components, Inc.*, Nos. 5:02-571, 5:04-84, 2007 WL 4701480 (E.D. Ky. June 22, 2007)); *id.* § 4:151 (May 2023 update) (citing Jury Instructions, *Wasica Finance GmbH v. Schrader Int'l Inc.*, No. 1:13-CV-01353 (D. Del. Feb. 13, 2020), ECF No. 215); *Impression Prods. v. Lexmark Int'l, Inc.*, 581 U.S. 360, 382 (2017); *LifeScan Scot., Ltd. v. Shasta, LLC*, 734 F.3d 1361, 1374 (Fed. Cir. 2013); *Helferich Pat. Licensing, LLC v. NY Times Co.*, 778 F.3d 1293, 1305–06 (Fed. Cir. 2015); *see also* ECF Nos. 203, 274. Infringement need not be the only possible use of the accused products, as Daingean claims. *See LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, 734 F.3d 1361, 1369 (Fed. Cir. 2013) (the Federal Circuit has "rejected the contention that a potential non-infringing use prevents exhaustion where the use in question is the very use contemplated by the patented invention itself."). Regardless, there can be no serious dispute that the only intended use of the base stations that Nokia sold to T-Mobile was in T-Mobile's 5G cellular network that, under Daingean's theory, infringes.

2017 Patent Cross License Agreement, Defendants must prove that the '803 Patent is an "Essential Patent" under that agreement. The 2017 Patent Cross License Agreement was admitted into evidence during this trial as DX-22.[67]

First, Defendants must prove that the only reasonable and intended use of Nokia's base stations is to practice the '803 Patent.[68] Second, Defendants must prove the accused base stations Nokia sold to T-Mobile include all inventive aspects of claim 12 of the '803 patent.[69]

This patent exhaustion affirmative defense does not apply to T-Mobile's use of Ericsson base stations.[70]

---

[67] Daingean's Position: In addition to its other objections to this instruction, Daingean objects on grounds that the proposed instruction highlights and emphasizes a particular exhibit (DX-22). This is highly prejudicial.

[68] Final Jury Instructions, *Pantech Corp. v. OnePlus Tech.*, at 19; *Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1373 (Fed. Cir. 2013) (citing *Quanta Comp., Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 631 (2008)); *JVC Kenwood Corp. v. Nero, Inc.*, 797 F.3d 1039, 1046 (Fed. Cir. 2015). Defendants' proposal wrongly suggests to the jury that there can be exhaustion if practicing the patent is one of multiple reasonable intended uses of the product sold. The caselaw makes clear that there is only exhaustion if the *only* reasonable and intended use of the product sold is to practice the claimed invention.

[69] Final Jury Instructions, *Pantech Corp. v. OnePlus Tech.*, at 19; *Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1373 (Fed. Cir. 2013).

[70] This instruction is necessary because T-Mobile's network includes both Ericsson and Nokia base stations, and the exhaustion defense only applies to the base stations supplied by Nokia.

## DAMAGES – GENERALLY[71]

If you find that T-Mobile's products infringed the asserted claim of the asserted patent, and that the asserted claim is not invalid, you must then consider what amount of damages, if any, to award to Daingean for that infringement. I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case on any issue. If you do not find that T-Mobile infringed the asserted claim, or if you find that the asserted claim is invalid, then Daingean is not entitled to damages.[72]

If you award damages, they must be adequate to compensate Daingean for any infringement. You must not award Daingean more damages than are adequate to compensate it for the infringement. You also must not include any additional amount for the purposes of punishing T-Mobile or setting an example.

Daingean in this case has the burden to establish the amount of its damages by a preponderance of the evidence.

---

[71] Final Jury Instructions at 21–27, *Mojo Mobility LLC v. Samsung Electronics Co.*, No. 2:22-CV-00398-JRG-RSP (E.D. Tex. Sep. 12, 2024) (not filed); *see also* Federal Circuit Bar Association Model Patent Jury Instructions § 5.1 (May 2020).

[72] Final Jury Instructions at 27, *Pardalis*; *see also* Final Jury Instructions at 18, *General* Access; Final Jury Instructions at 13, *Atlas*; Final Jury Instructions at 20, *Finesse*.

## REASONABLE ROYALTY

The patent laws provide that damages for infringement may not be less than a reasonable royalty. Plaintiff Daingean must prove the amount of its damages, if any, with reasonable certainty but need not prove the amount of damages with mathematical precision. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork. Daingean seeks damages in the form of a reasonably royalty.

A royalty is a payment made to a patent holder in exchange for the right to use the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when infringement first began. Because Mitsubishi owned the '803 patent when the alleged infringement first began, the hypothetical licensor in the hypothetical negotiation would have been Mitsubishi, and the hypothetical licensee would have been T-Mobile.

Evidence of things that happened after infringement first began can be considered in evaluating the reasonable royalty, but only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.[73]

The parties agree that the damages you award to Daingean, if any, should be a lump-sum royalty. A lump-sum royalty is when the infringer pays a single, one-time price for a license covering both past and future infringing sales for the life of the patent. Thus, if you find Daingean is entitled to damages, then the damages you award, if any, should reflect the total amount necessary to compensate Daingean for T-Mobile's past and future infringement.

---

[73] Final Jury Instructions at 28, *Pardalis*; *see also* Final Jury Instructions at 19, *General* Access; Final Jury Instructions at 14, *Atlas*; Final Jury Instructions at 21, *Finesse*.

In considering this hypothetical negotiation, you should focus on what the expectations of the licensor (Mitsubishi) and the licensee (T-Mobile) would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations. You must assume that both parties believed the asserted claim was valid and infringed, and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

The law requires that any damages awarded to the plaintiff correspond to the value of the alleged inventions within the accused products, as distinct from other, unpatented features of the accused products or other factors such as marketing or advertising or T-Mobile's size or market position. This is particularly true where the accused product has multiple features and multiple components not covered by the patent, or where the accused product works in conjunction with other non-patented items. Therefore, the amount you find as damages must be based on the value attributable to the patented technology. If the unpatented features contribute to an accused product, you must apportion that value to exclude any value attributable to unpatented features. You must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone. Daingean bears the burden to establish the amounts attributable to the patented features.

In determining a reasonable royalty, you should consider all facts known and available to the parties at the time the infringement began. Some kinds of factors that you may consider in making your determination are:

1.    The royalties received by the patentee for the licensing of the patents in suit, proving or tending to prove an established royalty.

40

2.      The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3.      The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.      The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5.      The commercial relationship between the licensor and the licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promotor.

6.      The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

7.      The duration of the patent and the term of the license.

8.      The established profitability of the product made under the patent; its commercial success; and its current popularity.

9.      The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10.    The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11.     The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.     The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor (such as Mitsubishi, the owner of the '803 patent at the time) and a licensee (such as T-Mobile) would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount that a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.[74]

---

[74] Defendants' Position: Defendants object to instruction on the highlighted Georgia Pacific factors as unsupported by competent evidence at trial. *See, e.g.*, *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014) (holding that the district court could not include all 15 *Georgia-Pacific* factors in its damages instruction without considering their relevance to record created at trial and whether they were misleading). Dell's conclusory statement that he considered all factors does not support instructions on factors that no witness actually analyzed or discussed before the jury.

Daingean's Position: Daingean's damages expert Mr. Dell testified that he considered all 15 factors. Trial Transcript, Vol. 2 (July 8, 2025), 539: 17-18. Therefore, this instruction is both "relevant to record created at trial" and not misleading. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014).

No one of these factors is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may have heard these factors referred to during the trial as the *Georgia-Pacific* factors.

You may also consider any other factors which in your minds would have increased or decreased the royalty T-Mobile would have been willing to pay and that the patent owner, Mitsubishi, would have been willing to accept, with both acting as normally prudent businesspeople.

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for the rights to the patent in question or for rights to similar technologies. Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award. Such licenses may indicate the patented invention's economic value in the marketplace. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between the patent owner and the alleged infringer in order for you to consider it.[75] However, if you choose to rely upon evidence from any other license agreements, you must account for any differences between those licenses and the hypothetically negotiated license, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope, when you

---

[75] Defendants' position: *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1373 (Fed. Cir. 2020) ("The fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility." (cleaned up) (quoting *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1227 (Fed. Cir. 2014))); *see also* Final Jury Instructions at 26, *Mojo Mobility LLC v. Samsung Electronics Co.*, No. 2:22-CV-00398-JRG-RSP (E.D. Tex. Sep. 12, 2024) (not filed) ("A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between the patent owner and the alleged infringer in order for you to consider it.").

Daingean's position: This instruction is nonstandard and unneeded. The use of the term "need not be perfectly comparable" is confusing to the jury and prejudicial. Moreover, the issue of comparability is adequately addressed by the remainder of this instruction which the parties have agreed to.

make your reasonable royalty determination. In the context of the hypothetical negotiation, it is not necessarily the case that each patent covered by other licenses that were presented contributes equally to the amount that was paid for those licenses.

Litigation can skew the results of the hypothetical negotiation and therefore, the hypothetical negotiation to determine the appropriate reasonable royalty occurs before the parties are engaged in litigation.[76]

In determining a reasonable royalty, you may also consider whether there were commercially-acceptable non-infringing alternatives to the '803 patent that were available at the time of the hypothetical negotiation and whether that would have affected the reasonable royalty the parties would have agreed upon. A non-infringing alternative is a way of providing the same or comparable functionality or achieving the same or comparable results that does not require using the asserted claims. You may compare the patented invention to non-infringing alternatives in

---

[76] Daingean's position: *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010) ("[T]his court has acknowledged that the hypothetical reasonable royalty calculation occurs before litigation and that litigation itself can skew the results of the hypothetical negotiation."); *see also Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1320-21 (Fed. Cir. 2010) (concluding that several licenses failed to support the verdict because amongst other things, "[the Plaintiff] signed several of these licenses after initiating or threatening litigation against the licensees, and 'litigation itself can skew the results of the hypothetical negotiation.'") (*citing ResQNet.com*, 594 F.3d 860).

Defendants' position: This instruction is nonstandard and unneeded. It is also confusing and potentially misleading. First, it does not tell the jury *how* litigation might "skew" a license negotiation. Second, it confusingly states that litigation can "skew the results of the hypothetical negotiation" when Daingean seemingly wants to communicate that litigation may have skewed *the terms agreed to in actual past licenses*, making those licenses less comparable to the hypothetical negotiation, which must assume infringement and validity. At any rate, the other, agreed instructions amply enable the parties to dispute the relevance of litigation to any allegedly comparable licenses used with the jury.

determining the value of the patented invention, including the utility and advantages of the patent over the old modes or devices, if any, that had been used to achieve similar results.[77]

    In considering the evidence of a reasonable royalty, you are not required to accept one specific figure or another for the reasonable royalty. You are entitled to determine what you consider to be a reasonable royalty based upon your consideration of all of the evidence presented by the parties whether that evidence is of a specific figure or a range of figures.

---

[77] Daingean's position: Final Jury Instructions at 55, *Constellation Design, LLC., v. LG electronics, Inc.*, No. 2:21-CV-448-JRG (E.D. Tex. At 15

Defendants' position: This instruction is inapplicable. No one has raised alleged NIAs before the jury.

## DATE OF COMMENCEMENT OF PATENT DAMAGES[78]

In calculating damages, you may only award damages to Daingean for infringement that occurred after the damages period begins. The damages period for issues related to infringement of the '803 patent began no earlier than March 7, 2022. However, the parties dispute the date after March 7, 2022, that the damages period began. In calculating damages for the '803 patent, you must consider whether or not Daingean or its licensees marked the products that practice the '803 patent. Marking is placing the word "patent" or "pat," and the number of the '803 patent, on or within substantially all of the products that include the patented invention. If you find Daingean or its licensees have failed to properly mark their products that practice the '803 patent, then you may only award damages to Daingean for infringement that occurred after the date Daingean gave actual notice to T-Mobile that Daingean believed T-Mobile was infringing the '803 patent. The filing of the complaint in this case occurred on March 24, 2023, and that constituted actual notice. It will be up to you, the jury, to determine when actual notice occurred. It is Daingean's burden to prove either marking or actual notice by a preponderance of the evidence.[79]

---

[78] Final Jury Instructions at 27, *Mojo Mobility LLC v. Samsung Electronics Co.*, No. 2:22-CV-00398-JRG-RSP (E.D. Tex. Sep. 12, 2024) (not filed); Final Jury Instructions at 88–89, *G+ Commc'ns, LLC v. Samsung Elecs. Co.*, No. 2:22-CV-00078-JRG (Feb. 2, 2024), ECF No. 592 (Trial Tr.).

[79] Defendants' position: The marking issue concerns Nokia base stations that Defendants allege are licensed under the Mitsubishi License's "Essential Patent" clause, a fact issue for the jury. Daingean's predecessor in interest, Mitsubishi, entered into the Mitsubishi License with Nokia in July 2017, six-plus years before Daingean filed this suit. If the jury finds that Nokia base stations were licensed, then Daingean cannot collect presuit damages unless Daingean carries its burden to prove that it met its marking obligation as to these base stations or gave T-Mobile actual notice of the alleged infringement, which are issues the jury must decide.

Daingean is incorrect that Nokia base stations did not need to be marked because they are not "patented articles." As described above (in Defendants' position on the parties' contentions), the accused products are undeniably base stations, not mobile subscriber stations. The claim is directed to, and recites, "[a] base station." Phones transmitting signals were undisputedly not new and make up no part of the claim's alleged inventive features. And every one of Daingean's witnesses has confirmed that claim 12 and this lawsuit concern base stations. Both sides' experts agree that the relevant accused functionality is in the accused base stations and that all allegedly inventive aspects of claim 12 are embodied in base stations. The accused Nokia base stations are therefore the allegedly "patented articles" for marking purposes.

To the extent that a "patented article" requires a phone here, then at the very least, Daingean was still required to mark the accused Nokia base stations because they are used in a *patented combination*. *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994). Daingean's purported distinctions of *Amsted* are illusory. There can be no serious dispute that Nokia base stations were sold to T-Mobile to be used in T-Mobile's 5G cellular network, and thus in combination with mobile subscriber stations.

Daingean's position: The jury should not be instructed on marking. The Court has already ruled that there was no obligation to mark Apple and TCL user equipment. Dkt. 383.

With respect to Nokia, if the jury concludes that Nokia was licensed to the '803 Patent, Defendants contend Nokia failed to mark its base stations sold to T-Mobile that are purportedly licensed by the Mitsubishi-Nokia License. The preamble to claim 12 of the '803 Patent requires both a "mobile subscriber station" and a "base station."  The Court construed the preamble to be limiting. Dkt. 145 at 13-14. Therefore, the claims of the '803 Patent require both a base station and a mobile subscriber station. Defendants have conceded this point multiple times in this litigation. *See, e.g.*, Dkt. 108 at 2 ("Under this construction, Daingean must treat the preamble as an element of the claim and point to a 'mobile subscriber station in each area transmitting a channel estimation signal' to prove infringement."); Dkt. 181-13, Ex. L at 10.

With those instructions, we are ready to hear closing arguments from the attorneys in this case.

---

The marking obligation is triggered when a patentee or its licensee sells a "patented article." 35 U.S.C. §287(a). Nokia only supplies the base station; it does not supply the claimed "mobile subscriber station." Therefore, Nokia's base stations alone cannot infringe, so the base stations are not a "patented article." Accordingly, there was no obligation to mark Nokia's base stations as a matter of law. Moreover, *Amsted* is distinguishable because in that case, "the record revealed that [the patent owner] manufactured and sold [the component] *for use* in the patented combination, *and* [] provided its customers with installation drawings which instruct how to assemble the [component], along with other components, according to the teachings of the patent." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994) (emphasis added). There is no such evidence in the record in this case. *See, e.g., Signal IP, Inc. v. American Honda Motors Co., Inc.*, No. cv-1402454 JAK (JEMx), 2016 WL 1693091, at *5 (C.D. Cal. Mar. 22, 2016) (distinguishing *Amsted* and noting that "[c]iting [*Amsted*], Defendants argue that § 287(a) applies where a patentee sells a component specific to the patented combination to a customer who later combines components to sell a patented article. Dkt. 167 at 3. However, *Amsted* presented different facts. There, the patentee did not dispute that its customers sold a patented article. 24 F.3d at 185. Further, it was clear that the patentee "impliedly authorized" its customers to sell a patented article because the patentee provided its customers with instructions on how to assemble its component with other components in accordance with the teachings of the patent.").

Additionally, as described above (in Defendants' position on the parties' contentions), the fact that certain parts of the accused communication system (e.g., phones) were "not new" and//or did not include "inventive features" does not change the claim scope which includes both base stations and subscriber stations. Consistent with the Court's claim construction order, Daingean's expert testified that the asserted claim relates to "a communication system that has base stations and mobile subscriber stations" and that the communication system that meets the claim limitations is "T-Mobile's 5G cellular network." *See, e.g.,* Trial Transcript, Vol. 2 (July 8, 2025) at 339:23-340:5, 348:20-349:2.

## DELIBERATIONS[80]

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

Answer each question in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law. Do not decide who you think should win this case and then answer the questions to reach that result. Again, I remind you, your answers to the questions in the verdict form must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A patent owner is entitled to protect his rights under the laws of the United States. This includes bringing suit in a United States District Court for money damages for infringement. The same guarantees allow alleged infringers to vigorously defend against assertions of infringement and allow an accused party to assert that patent claims are invalid. The law recognizes no distinction between types of parties. All corporations, all partnerships, and all other organizations stand equal before the law, regardless of their size or who owns them, and they are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you will each have a copy of these written jury instructions to take with you. If you desire, during your deliberations, to review any of the exhibits which the Court has admitted into evidence during the trial, you should advise me by giving a written note to the Court Security Officer, specifying which exhibit or

---

[80] Final Jury Instructions at 27–29, *Mojo Mobility LLC v. Samsung Electronics Co.*, No. 2:22-CV-00398-JRG-RSP (E.D. Tex. Sep. 12, 2024) (not filed).

exhibits you would like. He will bring me your note, and then I will send you that exhibit or those exhibits.

When you retire to the jury room to deliberate on your verdict, you should first select your Foreperson and then conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the verdict form your answers to the questions. Then your Foreperson is to sign the verdict form, date it, and notify the Court Security Officer that the jury has reached a verdict. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.

Any notes that you have taken over the course of the trial are aids to your memory only. If your memory should differ from your notes, then you should rely on your memory and not your notes. The notes are not evidence. A juror who has not taken notes must likewise rely on his or her own independent recollection of the evidence, and should not be unduly influenced by the notes that were taken by other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time during your deliberations, you should give a written message or a question to the Court Security Officer who will bring it to me. I will then respond as promptly as possible, either in writing or by having you brought back into the courtroom where I can address you orally. I will always first disclose to the attorneys in the case your question and my response before I answer your question.

After you have reached your verdict and I have discharged you from your duty as jurors, you need to understand that you are not required to talk with anyone about your service in this case. By the same token, after I have discharged you from your duty as jurors, you are completely

free to discuss your service as jurors in this case with anyone that you choose to. The choice is yours.

You should understand the practice in this Court is that after you are discharged, if you wish to talk about your service as jurors with any of the attorneys in the case, it is up to you to initiate a conversation with them. They are not permitted to initiate a conversation with you.

I will now hand eight copies of these final jury instructions and one clean copy of the verdict form to the Court Security Officer to deliver to the jury in the jury room.

Ladies and Gentlemen of the Jury, you may now retire to the jury room to deliberate. We await your verdict.